UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth Wendell JONES, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey Lane BARNES, Defendant–Appellant.

Nos. 96–1758, 96–1760.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 21, 1996.

Decided Dec. 2, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 31, 1996.

Heidi Crissey, Stillwater, MN, argued, for Kenneth Wendell Jones.

Douglas Peine, St. Paul, MN, argued, for Jeffrey Lane Barnes.

Jeffrey Paulsen, Assistant U.S. Attorney, Minneapolis, MN, argued, for U.S.

Before WOLLMAN, LAY, and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

In an alley in St. Paul, Minnesota, at three o'clock in the morning on June 24, 1990, witnesses discovered the burning, dead body of twenty-six-year-old Duon Walker. Duon was a cocaine dealer from Los Angeles who was temporarily staying with Kenneth Wendell Jones in Jones' St. Paul condominium. The cause of Duon's death was three gunshots to the head at close range with a .22 caliber handgun. His body had been wrapped in plastic, doused with gasoline, and set ablaze within two miles of Jones' condominium. Shortly before Duon's murder, Jones and Duon executed a drug deal in Jones' condominium in which Jones paid Duon $90,000 cash.

Just prior to June 24, Jeffrey Lane Barnes had also come to Minnesota from his home in Los Angeles. The day after witnesses discovered Duon's burning body, airport police stopped Barnes at the Minneapolis Airport for reasons not directly related to this case while Barnes prepared to board a return flight to Los Angeles under an assumed name. Police seized a loaded .22 caliber revolver and $13,900 cash from Barnes' checked baggage following a search.

Over two years passed, but law enforcement authorities failed to solve Duon's murder. Barnes moved to Minnesota, and in late 1993, FBI agents obtained authorization to wiretap Jones' and Barnes' residences, and recorded discussions regarding cocaine dealing and murder. Taped discussions between Jones and Barnes led authorities to others involved in drug distribution. The subsequent investigation revealed that Jones headed a substantial drug distribution operation responsible for importing at least fifty pounds of cocaine into Minnesota for resale.

Authorities learned that Barnes told three different individuals, including Barnes' nephew, a fellow inmate, and a pastor, that he and Jones had killed Duon Walker after Duon attempted to cheat them in a drug deal. Irene Schuck, Jones' girlfriend, helped Jones launder drug money through real estate deals, and she had told witnesses that at Jones' direction she cleaned up a large quantity of blood from Jones' bathroom within two days of Duon's murder. Authorities di-

sassembled the tile floor in Jones' bathroom and discovered that blood had seeped through the grout lines and tile base and settled in the wooden subflooring. A ballistics expert established that the .22 caliber handgun airport police found in Barnes' baggage was the gun used to kill Duon. Authorities also intercepted a telephone discussion between Barnes and a government informant regarding how the two might kill a specific drug dealer.

A federal grand jury indicted Jones for intentionally engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848(a). It indicted both Jones and Barnes for: intentionally killing Duon in the furtherance of a continuing criminal enterprise (CCE-murder) in violation of 21 U.S.C. § 848(e)(1); conspiring to distribute over five kilograms of cocaine, including over 50 grams of crack, in violation of 21 U.S.C. § 846; and intentionally killing Duon while engaging in a conspiracy to distribute drugs in violation of 21 U.S.C. § 848(e)(1).

The government argued at trial that Barnes was the hit man Jones summoned from Los Angeles to kill Duon for $20,000 because Duon cheated Jones in a cocaine transaction, and that the two killed Duon in Jones' bathroom and later disposed of the body by setting it afire in the alley. In the joint trial, over Jones' objections, the district court admitted the hearsay testimony of Barnes' redacted confessions to Jeffrey Barnes' nephew, Russell Barnes, and to a pastor, Marc Looney. The confessions originally included admissions that Barnes and Jones murdered Duon. However, neither Russell nor Looney referred to Jones by name when testifying about Barnes' confessions.

The jury convicted Jones on all counts charged. The district court entered judgment and sentenced Jones to concurrent life sentences for each of the four counts against him. The jury convicted Barnes of CCE-murder and of conspiring to distribute cocaine. It deadlocked as to whether Barnes intentionally killed Walker while engaging in a conspiracy to distribute drugs. The court declared a mistrial as to the deadlocked count and sentenced Barnes to two concurrent life sentences. Both defendants appeal.

## DISCUSSION

Barnes and Jones each raise several grounds of error. We deal with their contentions *seriatim.*

### Barnes

#### CCE–Murder

■ Barnes argues that his conviction of CCE-murder under 21 U.S.C. § 848(e)(1) cannot stand because the statute imposes liability solely on the CCE "kingpin." Because Barnes did not raise this issue below we review only for plain error. Fed. R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993).

Barnes' reliance on the general *CCE* principle that the kingpin is the primary focus is misplaced as it relates to his conviction of *CCE-murder.* The murder subsection of the statute imposes liability not just on a person "engaging in" the CCE, but alternatively on a person "working in furtherance of" the CCE, where he or she also either intentionally kills a person or "counsels, commands, induces, procures, or causes the intentional killing." 21 U.S.C. § 848(e)(1)(A). The Seventh Circuit in *United States v. Cooper* distinguished persons "engaged in" a CCE from persons "working in furtherance of" a CCE, and concluded that one need not be the CCE kingpin (i.e., "engaged in" a CCE) to work to further the CCE. 19 F.3d 1154, 1164–65 (7th Cir.1994). Reasoning that the phrase "working in furtherance of" would be superfluous if it referred only to kingpins, the *Cooper* court affirmed the conviction of a CCE supervisee who killed at the behest of the CCE kingpin. *Id.; see also United States v. McCullah,* 76 F.3d 1087, 1103 (10th Cir.1996) ("[T]he reach of section 848(e) extends to hired henchmen . . . who commit murder to further a drug enterprise in which they may not otherwise be intimately involved.").

Following the Seventh Circuit's reasoning in *Cooper,* we hold that a person does not avoid prosecution for CCE-murder under § 848(e)(1)(A) simply based upon his supervisee status in the CCE. Accordingly, when

Barnes shot and killed Duon as a result of Duon's attempt to cheat Jones' CCE out of drugs or drug money, he did so in the "furtherance of" Jones' CCE within the meaning of § 848(e)(1)(A). We hold the district court did not err in submitting this issue to the jury.

*Sufficiency of Evidence: CCE–Murder and Drug Distribution Conspiracy*

 Barnes challenges the sufficiency of the evidence as it relates to his convictions of CCE-murder and conspiracy to distribute cocaine. We review sufficiency of the evidence by considering the evidence in the light most favorable to the jury's verdicts. *United States v. Malone*, 49 F.3d 393, 397 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995).

Barnes contests the ballistics evidence offered by ATF agent John O'Neill and O'Neill's conclusion that the firearm in Barnes' luggage was the weapon used to kill Duon. Barnes also disputes the hearsay confession testimony offered by the pastor, an inmate, and Barnes' nephew. As to all of this evidence Barnes insists the witnesses simply were not credible in light of conflicting testimony. Particularly, he points to the failure of two ballistic experts to conclude definitely that Barnes' .22 caliber handgun was the same .22 caliber handgun fired into Duon's head. He also lists certain witnesses who questioned the veracity of the government's three confession witnesses.

In *United States v. Anderson* we observed, "It is not our province on appeal to reweigh the evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence. It was for the jury to resolve conflicting testimony and determine witness credibility." 78 F.3d 420, 422–23 (8th Cir. 1996) (internal quotations omitted). Thus, we will not second-guess the jury's apparent crediting of Agent O'Neill's conclusion, notwithstanding the uncertainty of other experts, nor will we reweigh the credibility of the confession witnesses.

To prove CCE-murder under 21 U.S.C. § 848(e)(1), the government must prove: (1) that Barnes was engaged in or working in the furtherance of Jones' CCE; (2) that Barnes intentionally killed Duon or commanded, induced, procured or caused his intentional killing; (3) that Duon's killing actually resulted; and (4) that there was a substantive connection between the killing and the CCE. *See United States v. Tipton,* 90 F.3d 861, 887 (4th Cir.1996).

There was ample evidence to support the jury's verdict that Barnes murdered Duon in the furtherance of a CCE. Russell Barnes testified that "[Jeffrey Barnes] said [Duon] tried to jack them for some work, some of the dope. And they killed him." Trial Tr. at 788. Fellow inmate Thomas Carter testified that Barnes had told him that Barnes and some friends "got ripped off," by Duon, and that "[Barnes] killed him" in response. *Id.* at 956. Pastor Looney testified that Barnes told him, "We did that," regarding Duon's murder. *Id.* at 1058.

The jury could have believed any or all of these witnesses, and it was aided by the evidence that the day after Duon's body was set ablaze, airport police intercepted Barnes while he was carrying a firearm and attempting to fly to Los Angeles under an assumed name. Agent O'Neill later determined that the same firearm was used to kill Duon. Under the circumstances, we deem the evidence sufficient to allow the jury to find beyond a reasonable doubt that Barnes murdered Duon for reasons substantively connected to Jones' drug-distribution CCE.

 To prove Barnes conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute cocaine; (2) that Barnes knew of the conspiracy; and (3) that Barnes intentionally joined the conspiracy. *See United States v. Shoffner,* 71 F.3d 1429, 1433 (8th Cir.1995). Tacit understanding—as opposed to mere presence at and knowledge of an intended drug sale—will suffice; a formal agreement is unnecessary. *Id.* at 1433–34. (citations omitted).

The evidence showed that Barnes participated with Jones in drug dealing over a long period of time; that in 1989 when Sheila Swanson, one of Jones' drug couriers, picked up Jones from the airport after he arrived in Los Angeles for a four-kilogram cocaine deal,

Barnes was present with him and accompanied him throughout the deal, and returned with Jones to Minnesota; and that Barnes represented to witnesses that the reason he killed Duon was because Duon had attempted to cheat "them" out of drugs or drug money. Substantial evidence establishes that Barnes was part of a conspiracy to distribute cocaine as charged in Count 3.

### Jones

#### Double Jeopardy: CCE and Drug Distribution Conspiracy

■ The government concedes that Jones cannot be convicted under the facts of this case both for engaging in a CCE and for conspiring with others to distribute drugs. We agree. *See Rutledge v. United States,* — U.S. —, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (holding that conspiracy to distribute drugs under § 846 is a lesser included offense of engaging in a CCE under § 848 and that only one judgment may be entered where a defendant is convicted of both for the same agreement); *see also United States v. Possick,* 849 F.2d 332, 341 (8th Cir.1988) (same). We remand this case to the district court to vacate Jones' conviction on the conspiracy count. *U.S. v. Jelinek,* 57 F.3d 655 (8th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 236, 133 L.Ed.2d 164 (1995).

#### Double Jeopardy: CCE–Murder and Drug Conspiracy Murder

■ Jones maintains the district court erred by entering convictions against him as to both intentionally killing Duon in the furtherance of a CCE and intentionally killing Duon while engaged in a conspiracy to distribute drugs.[1]

In contending that a defendant can be convicted twice under this statute for a single murder without violating the Double Jeopardy Clause, the government maintains that killing while engaging in a drug distribution conspiracy requires proof of a different element than killing while engaged in a CCE. Thus, argues the government, the former is

not a lesser included offense of the latter and double jeopardy is not implicated.

To be convicted of killing while engaged in a drug conspiracy, one must kill while engaged in "an offense punishable under section 841(b)(1)(A)." 21 U.S.C. § 848(e)(1)(A). Section 841(b)(1)(A) simply pronounces the quantity-based penalties for drug distribution under § 841(a). *See United States v. Wood,* 834 F.2d 1382, 1388–90 (8th Cir.1987). Here, Jones' conspiracy is not "punishable" under § 841(b)(1)(A) because application of the Double Jeopardy Clause to Jones' predicate conspiracy conviction has eliminated the possibility that § 841(b)(1)(A) could be triggered. Because the Double Jeopardy Clause as applied in this case renders Jones' drug conspiracy unpunishable, the government cannot establish a necessary element upon which Jones' conviction for murder while engaging in the conspiracy rests. Accordingly, that conviction cannot stand.

#### Sufficiency of Evidence: CCE–Murder and Drug Conspiracy Murder

■ Jones argues there was insufficient evidence to convict him of CCE-murder. We apply the same test, discussed above, in reviewing whether the evidence was sufficient for the jury to convict Jones of CCE-murder under 21 U.S.C. § 848(e)(1). After considering the evidence against Jones in the light most favorable to the jury's verdict and accepting as established all reasonable inferences that support the verdict, we find overwhelming evidence to sustain the jury's conviction of Jones.

Jones particularly challenges only the fourth element of CCE-murder as outlined above: whether there was a substantive connection between the killing and the CCE. *See Tipton,* 90 F.3d at 887. Jones asserts that the only proof of a nexus between the murder and the CCE arises from Barnes' hearsay confessions, which must be applied only against Barnes.

Jones does not challenge the jury's finding that he headed a CCE. Without regard to Barnes' confessions linking Jones to the mur-

---

1. As noted, the government recognizes that the Supreme Court's decision in *Rutledge* and this circuit's earlier decision in *Possick* establish that a dual conviction for conspiracy to distribute drugs under § 846 and engaging in a CCE under § 848(a) violates the Double Jeopardy Clause because the former is a lesser included offense of the latter.

der in relation to a drug deal, the evidence tends to support the conclusion that: Duon was a major drug source for Jones' CCE; on behalf of his CCE Jones paid Duon a very large sum of cash for drugs shortly before Duon's murder; and Jones acquired a very large sum of cash shortly after the murder. The government's theory that Jones killed Duon to regain the cash or drugs is a reasonable inference from the evidence admitted against Jones and satisfies the challenged element of CCE-murder.

Finally, Jones asserts there was insufficient evidence to support the jury's guilty verdict regarding murder while engaging in a drug conspiracy. Because of our conclusion that the drug distribution conspiracy conviction cannot stand based on the double-jeopardy analysis above, we need not reach this issue.

*Confrontation Clause*

█ Jones contends that by admitting Barnes' confessions as provided in the hearsay testimony of Russell Barnes and Marc Looney, the district court denied Jones' right under the Confrontation Clause to cross examine government witnesses.[2] He asserts the violation warrants reversal.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court reviewed the conviction of a defendant whose non-testifying co-defendant's out-of-court confession, admitted at trial, explicitly inculpated both of them. The *Bruton* Court reversed the conviction as a violation of the Confrontation Clause, notwithstanding the trial court's instruction to the jury that it may consider the confession only against the co-defendant.

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court considered the application of *Bruton* to the admission of a co-defendant's confession that had been redacted, omitting any reference to the defendant. Although it remanded the case due to the prosecutor's attempt during his closing argument to per-

suade the jury to use the confession against the defendant, the Court found no fault with admission of the redacted confession. The majority rejected the argument that other admissible evidence may have implicitly linked the defendant to the confession. *Marsh* held that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession where the court issues a proper limiting instruction and "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. at 1709.[3]

Since *Marsh*, we have had several occasions to consider the admissibility of a co-defendant's confession from which a defendant's name has been removed and replaced with a neutral pronoun. First, we decided *United States v. Garcia*, 836 F.2d 385 (8th Cir.1987). There, in a post-arrest statement admitted into evidence, a co-defendant disclosed that he had been instructed to deliver heroin to "someone" on a date certain. *Id.* at 389. Another witness identified the defendant as the man who met the co-defendant in the alley on that particular date. We held that the testimony was properly admitted because the redacted statement "did not draw attention to the fact that the prosecution had the name available to it and purposely omitted it from the statement." *Id.* at 391.

In contrast, in *United States v. Long*, 900 F.2d 1270 (8th Cir.1990), we held that a co-defendant's statement to an FBI agent replacing the defendant's name with "someone" was improperly admitted under *Bruton*. We distinguished *Garcia* because in *Long* the co-defendant's cross-examination of the agent "led the jury straight to the conclusion that 'someone' referred to [the defendant]." *Id.* at 1280.

In *United States v. Donahue*, 948 F.2d 438 (8th Cir.1991), *cert. denied*, 503 U.S. 976, 112 S.Ct. 1600, 118 L.Ed.2d 314 (1992), we found no *Bruton* violation where the jury learned

---

2. Jones does not here challenge the admitted hearsay testimony offered by Thomas Carter.

3. The Court noted that it was expressing no opinion on the admissibility of confessions in

which the defendant's name is replaced with a pronoun, like the confessions admitted in this case. *Marsh*, 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5.

from a co-defendant's post-arrest admission that, after the bank robbery, "everyone [in the car]" had been sprayed when the dye pack discharged, and "everyone [in the car]" was afraid. Because there was no explicit reference to the defendant by name and the language of the statement did not itself otherwise draw attention to the defendant or invite speculation, we held the admission to be proper. *See id.* at 443–44.

In *United States v. Miller,* 995 F.2d 865 (8th Cir.), *cert. denied,* 510 U.S. 1018, 114 S.Ct. 618, 126 L.Ed.2d 583 (1993), the confession as presented at trial referred to "persons in Minnesota" instead of to the defendant by name or by suggestion. We held that the co-defendant's redacted confession did not violate *Bruton,* as it neither expressly implicated the defendant nor was it directly tied to the defendant by the prosecutor's statements.

With this background, we turn to the present case. Russell testified that, according to Jeffrey Barnes, Duon "tried to jack *them* for some work, some of the dope. And *they* killed him." Trial Tr. at 788 (emphasis added). He said that Barnes "said that the dude was running some of *their* work, some of *their* cocaine," and repeated that "*they* killed him." *Id.* at 789 (emphasis added). Regarding disposing of Duon's body, Russell reported that Barnes "said *they* threw it in an alley," and that "*they* set him on fire." *Id.* (emphasis added). Pastor Looney testified that Barnes referred to Duon's killing by admitting, "*We* did that." *Id.* at 1058 (emphasis added).

Jones argues that because he and Barnes were the only persons named in the indictment, and were the only defendants present in the courtroom, "[t]he jury could easily and logically conclude that 'they' and 'we' referred to Jeffrey Barnes and Mr. Jones." Jones Appellant Br. at 21. But *Marsh*

teaches that the issue is not whether it would be "easy" or "logical" for the jury to conclude that the co-defendant's confession was referring to the defendant. The inquiry instead must focus on whether the co-defendant's redacted confession *itself* implicates the defendant; there is no violation where the confession implicates the defendant only when linked to other evidence. *Miller,* 995 F.2d at 867; *Donahue,* 948 F.2d at 444; *Garcia,* 836 F.2d at 390. Indeed, the concern answered by *Bruton* and clarified in *Marsh* is whether a court's instruction to apply a confession only to the declarant is adequate to constrain the jury to do so. Of course, the very question presupposes that, if left without instruction, the jury might "easily" and "logically" apply the confession to the defendant. In cases where the co-defendant's confession on its face incriminates a defendant, as in *Bruton,* a limiting instruction inadequately safeguards against the inevitable prejudice the confession places upon him or her. But subsequent authority teaches that *Bruton* is limited to that circumstance and the indistinguishable circumstance where the confession is redacted but nevertheless "[leads] the jury straight to the conclusion that [the replacement pronoun] refer[s] to [the defendant]." *Long,* 900 F.2d at 1280.

The single reference to "we" and several references to "they" in the witnesses' testimony here could have referred to anyone or any group of individuals acting with Barnes. Jones does not argue that the prosecutor or other evidence impermissibly linked the pronouns used in the redacted confessions to Jones.[4] That other independent circumstantial evidence tended to suggest that Barnes and Jones committed the murder together does not render admission of the redacted confessions erroneous. We therefore hold the district court did not abuse its discretion by admitting the confessions.[5]

---

4. Indeed, the record establishes that the prosecutor carefully applied the confessions only to Barnes. In his opening statement he said:

 *Barnes* has made admissions to various people about *his* role in these crimes. He has admitted ... that *he* killed Duon Walker, that it was over a drug dispute, and that *he* got money as a result.... He told one of these people Walker *was killed* in a St. Paul apartment and the plastic *was used* to contain the blood.

Trial Tr. at 26–27 (emphasis added). Likewise, in his closing argument the prosecutor did not include Jones in any discussion of Barnes' confessions. *See id.* at 1489–91.

5. While the parties do not cite *United States v. Bennett,* 848 F.2d 1134 (11th Cir.1988), we find it necessary to note the distinction between the improper admission there and the proper admission here. In *Bennett,* the Eleventh Circuit also

*Other Trial Errors*

Jones raises several other trial errors. He asserts that the district court should have granted a severance under Rule 14 of the Federal Rules of Criminal Procedure on the basis that certain evidence was admissible only against Barnes. In addition to the admission of Barnes' confession, he cites a tape-recorded phone conversation between Barnes and a government informant. Jones' name was not mentioned in the recording and the district court gave a limiting instruction. We have emphasized that "[r]arely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Drew,* 894 F.2d 965, 968 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). We find no prejudice here.

██ Jones asserts that he is entitled to a new trial because of prosecutorial misconduct involving the use of the recorded phone conversation between Barnes and the government informant. In closing argument the government used Barnes' recorded statement to the informant as to how to eliminate another drug dealer. The prosecutor summarized, stating that this is the "exact description of the way *they* killed Duon Walker." Trial Tr. at 1493–94 (emphasis added). According to Jones' counsel, this argument invited the jury to disregard the court's instruction that Barnes' recitation of a hypothetical murder plan was only to be used against Barnes.

Assuming, without deciding, that the summary could be construed to be in disregard of the court's limiting instruction, we find no prejudice requiring a mistrial. The cumulative effect of the solitary comment was scant. The prosecutor otherwise in this context referred solely to Barnes. While discussing the recording the prosecutor did not indicate that Jones was to be part of the plan. Thus, we find the remark's effect was slight, considering the overall evidence implicating Jones.

The jury learned that Jones had a large quantity of human blood in his bathroom shortly after the murder, including splatters on the wall or ceiling and a substantial concentration on the floor; that Duon had been staying with Jones in Jones' condominium and was one of Jones' cocaine sources; that Jones had entered a substantial drug deal with Duon involving Jones' payment to Duon of $90,000 very recently before Duon's murder; that both Barnes and Jones were together just prior to the burning of Duon, less than two blocks from Jones' condominium; that a witness observed a car resembling Jones' girlfriend's car, occupied by two men, driving slowly into the alley just before Duon's body was incinerated; that after the body was set ablaze the witness also saw the car leave the alley heading in the general direction of Jones' residence, which was within two miles of the burning body; that just after the murder Jones also told an acquaintance, one of his drug couriers, to get rid of Duon's pickup truck, which was then parked near Jones' residence; that authorities did not locate the $90,000 cash, and Jones paid Barnes $20,000 cash the day following the murder; that the day after Duon's murder Jones falsely denied to a different drug courier that Duon had been in his condominium; and that two years after Duon's murder Jones reminisced with Barnes about the people they had "popped" in the past. This evidence, taken together, is overwhelming and supports the jury's conclusion that Jones aided and abetted Barnes in murdering Duon Walker.

██ Jones also asserts that the government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by reason of its delay in providing an FBI interview report until the third day of trial. The report revealed that during an FBI interview Robert Walker stated his belief that Harout Babadjanian, Duon's associate, had installed

---

considered replacement of a defendant's name with the pronoun "they" in a redacted confession, but held that the redaction was improper. There, however, both in the opening statement and closing argument the prosecutor specifically argued as if the "they" of the redacted confession included the unnamed defendant and the confessing co-defendant. *Id.* at 1142. Thus, *Bennett*

is to *Long* as this case is to *Garcia;* "they" and "someone" violate *Bruton* when the unnamed defendant is tied directly to the confession in the manner and context in which the confession is presented, but "they" and "someone" do not violate *Bruton* where the manner of presenting the confession and the context do not lead the jury directly to the defendant.

a false gas tank on Duon's pickup truck, and that Duon hid and transported guns or cocaine in the false tank. Additionally, the report revealed that Robert believed Jones may have conspired to kill Duon, and that Robert believed Duon was in possession of a large quantity of drugs and money at the time of his murder. Neither the government, Jones nor Barnes called Robert to testify, but the government planned to call Babadjanian later the same day that it disclosed the FBI report to the defendants. The court gave the defendants time to prepare to cross-examine Babadjanian by postponing Babadjanian's appearance. Five days later the government called Babadjanian to testify and Jones cross-examined him regarding the gas tank.

The government must disclose evidence favorable to a defendant whether requested or not. *Kyles v. Whitley,* —— U.S. ——, ——, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). However, there is no due process violation under *Brady* "as long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence." *Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir.1986); *see also United States v. Gonzales,* 90 F.3d 1363, 1368 (8th Cir.1996) ("Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, *Brady* is not violated.").

Jones argues that the FBI report is exculpatory, in that it would have permitted him to develop the theory that Babadjanian or someone else killed Duon. However, we find nothing in the report that demonstrates that without it, Jones would not have received a trial resulting in a verdict worthy of confidence. That Babadjanian installed a false tank on Duon's truck somehow reveals a motive for Babadjanian to murder Duon certainly is not intuitive, and fails to establish an alternative theory the jury might have reasonably believed. Indeed, we agree with the government that the report is generally inculpatory, rather than exculpatory. It revealed that during the interview Robert reached the same conclusion the government wanted the jury to reach: that Jones conspired to kill Duon and then took Duon's money and drugs.

Additionally, the government disclosed the report when it became aware of it, although this was after the trial began, and its disclosure afforded Jones five days to prepare to cross-examine Babadjanian. This was ample time for Jones to use the report to impeach Babadjanian. Jones' argument that earlier disclosure would have permitted him to locate Robert to testify on his behalf is without merit. First, he does not contend that he ever attempted to locate Robert, even after he received the report. Moreover, even if Robert had been called as a witness, it would have been improper for him to testify regarding the false gas tank simply to impeach Babadjanian. *See* Fed.R.Evid. 608(b) (restricting admission of extrinsic evidence of a collateral matter to attack credibility).

We see no *Brady* violation here. To the very limited extent the report was exculpatory, it was disclosed in sufficient time for proper use by the defense.

### CONCLUSION

For the foregoing reasons we affirm Barnes' convictions on both counts. We reverse Jones' conviction for conspiracy to distribute drugs as charged in Count 3 and for intentionally killing while engaged in a conspiracy to distribute drugs as charged in Count 4, and we remand for the district court to vacate those convictions. We affirm Jones' conviction in every other respect.