# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2935

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Darlene M. Edwards, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 97-2943

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Richard W. Brown, | * |
| | * |
| Defendant - Appellant. | * |

Appeals from the United States
District Court for the
Western District of Missouri.

_____

No. 97-3019

_____

| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Earl D. Sheppard, also known as | * |
| Skip Sheppard, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 97-3022

_____

| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Bryan E. Sheppard, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 97-3028

_____

United States of America,       *

                                  *

      Plaintiff - Appellee,     *

                                  *

      v.                       *

                                  *

George Frank Sheppard, also known   *

as Frank Sheppard,            *

                                  *

      Defendant - Appellant.    *

                           _____

Submitted:  April 15, 1998
Filed:  October 30, 1998

_____

Before LOKEN and LAY, Circuit Judges, and PRATT,[*] District Judge.

_____

LOKEN, Circuit Judge.

Early in the morning on November 29, 1988, two Kansas City Fire Department pumpers arrived to fight two fires at a highway construction site in southeast Kansas City.  The first pumper extinguished a burning pickup truck on the west side of the site and joined the second pumper on the east side, where an aluminum storage trailer containing 25,000 pounds of explosives was on fire.  The trailer exploded, instantly killing six firefighters and igniting a second trailer filled with 30,000 pounds of

_____

[*]The HONORABLE ROBERT W. PRATT, United States District Judge for the Southern District of Iowa, sitting by designation.

-3-

explosives, which also exploded. Over seven years later, Darlene Edwards, Richard Brown, Earl (Skip) Sheppard, Bryan Sheppard, and Frank Sheppard were indicted and convicted of the capital offense of aiding and abetting arson that caused the deaths of the firefighters. They appeal their convictions and life sentences. The primary issue is whether their Confrontation Clause rights as defined in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and its progeny were violated by the government's reliance on testimony by numerous witnesses relating each defendant's out-of-court admissions of complicity, and by the district court's[1] refusal to grant either their motions for severance or mistrial. The court instead allowed government witnesses to replace references in the admissions to codefendants with neutral pronouns and then instructed the jury to consider each admission only against the declarant. We affirm.

## I. Sufficiency of the Evidence.

The highway construction site was patrolled by two security guards. At 3:15 a.m., one guard thought she saw two people walking down the highway. The guards looked for trespassers, leaving one of their vehicles, a pickup truck, parked on the west side. They drove to a nearby convenience store, the Quik Trip, and learned the store manager had not seen anyone. As the guards were leaving the store, a car pulled up and the driver yelled there was a fire at the construction site. The guards returned and reported their pickup truck was on fire and a second fire could be seen on the east side. At 4:08 a.m., the first trailer exploded, killing the six firefighters.

Investigators concluded the pickup truck fire started when gasoline was poured into the driver's side of the cab and ignited, and the trailer fire began in the tire area and became so hot that the walls of the trailer ignited and caused the ANFO explosives to

---

[1]The HONORABLE JOSEPH E. STEVENS, JR., United States District Judge for the Western District of Missouri, presided over the trial after the HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, withdrew from the case because of illness.

explode.  The investigation into who caused the fires was frustrated by a lack of witnesses and surviving physical evidence.  After years of dead ends, the explosions were reenacted on a national television program, <u>Unsolved Mysteries</u>, accompanied by a well-publicized $50,000 reward, extensive local publicity, and a phone number for reporting tips.  Defendants lived in Marlborough, a neighborhood adjacent to the construction site.  Frank and Skip Sheppard are brothers, Bryan Sheppard is their nephew, Richard Brown is Bryan Sheppard's best friend, and Darlene Edwards was living with Frank Sheppard at the time of the explosion.  Many callers reported that defendants had repeatedly boasted of starting the fires.  These indictments followed.

The government's evidence at trial included Darlene Edwards's 1995 tape-recorded statement.[2]  Edwards told investigators that sometime between 1:30 and 2:30 a.m. Bryan Sheppard came to her house and asked if she would take Bryan and Richard Brown to get gas because their car had run out.  Leaving Frank Sheppard asleep, Edwards drove Bryan and Brown to the nearby Quik Trip where they filled a gas can.  They told Edwards their car was near the construction site, but when she neared the site her companions explained they planned to set a fire with the gasoline to divert security guards while they stole from the site.  Edwards refused to go with them but agreed to drop them off.  Over defense objections, the district court admitted a redacted version of this statement against Edwards.  Additional evidence against her included three inmates who testified that Edwards told them, while she was incarcerated with them on other charges, that she and others had planned to steal tools and equipment from the construction site to sell or trade for drugs, and that she had driven the others to get gas to start a diversionary fire and cover up the thefts.

---

[2]Edwards argues the district court committed plain error by admitting a statement that was not against her penal interest.  We disagree.  The statement was properly admitted as the admission of a party opponent under Fed. R. Evid. 801(d)(2)(A).  <u>See</u> <u>United States v. Coco</u>, 926 F.2d 759, 760 (8th Cir. 1991).

Fifteen witnesses testified to admissions by Richard Brown, for example, that "he went down there to steal and on the way down there they were out of gas and had to get some gas," that he got mad trying to get into the trailer and lit a fire with gas, and that they set a pickup truck and then a trailer on fire. Seven witnesses testified to admissions by Skip Sheppard, for example, that he and others had been at the site to steal, that "they were stealing tools from the construction site," that they "set fire to cover up the stuff they had taken," and that the "gas came from the Quik Trip station on 71 Highway." Thirteen witnesses testified to admissions by Bryan Sheppard, for example, that "they went to steal batteries and they set the fire to cover their tracks and they saw two security guards and they ran," and that "he set a fire as a diversion to go steal some explosives." One witness overheard Bryan Sheppard say to Frank, "I'm not like you and the other guys. I can't live with myself because of the death of them firemen, and it's eating me up." Twelve witnesses testified to admissions by Frank Sheppard, for example, that "the fire was set as a diversion and that they didn't know explosives were in the dump truck," that "someone had drove him and someone else to get some gas that they had used to start the fire," and that "they were down there trying to get into the trucks and they weren't able to get anything and decided to pour gasoline on them and get them on fire."

Defendants argue the evidence was insufficient because the government did not introduce substantial independent evidence corroborating their out-of-court admissions. It is well-settled that "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." Wong Sun v. United States, 371 U.S. 471, 488-89 (1963). However, "[w]here the crime involves physical damage to person or property, the prosecution must [only] show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. . . . There need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it." Id. at 489-90 n.15 (citations omitted); see also United States v. Jacobs, 97 F.3d 275, 283 (8th Cir. 1996); United States v. Opdahl, 610 F.2d 490 (8th Cir. 1979). Here, there was physical evidence that

-6-

arson caused the pickup truck fire and circumstantial evidence that arson caused the trailer fire. Therefore, independent corroboration of the admissions was not required.

Moreover, we reject defendants' premise that the government's case lacked corroborating evidence. Becky Edwards, Darlene's daughter, testified that she heard all five defendants planning to steal from the construction site about one week before the explosion. Investigators found a gas can on the site that did not belong to the construction contractors, and a witness testified that Frank and Skip Sheppard had many gas cans as part of their lawn mowing business. A number of witnesses saw the defendants in various groups in the Marlborough neighborhood before and after the explosions. One saw Richard Brown's car driving at high speed a short distance from the construction site three to five minutes after the first trailer exploded. Another saw Frank and Skip Sheppard and two others pull up to their mother's house near the construction site five to ten minutes after the explosion. Another saw Bryan Sheppard and Richard Brown around 7:30 a.m., after the explosion; Bryan smelled of gasoline and smoke and had numerous scratches and abrasions. Taken as a whole, the evidence tends to establish the trustworthiness of defendants' many admissions.

Defendants further argue the government failed to prove that fire can cause ANFO to explode because its opinion evidence to this effect did not meet the standards of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).[3] <u>Daubert</u> was not argued to the district court, and the contention is without merit. Expert testimony would assist the jury on this issue, <u>see</u> Fed. R. Evid. 702, and the government's experts were well qualified. While admitting that ANFO ordinarily burns without exploding, one testified, "once ANFO gets superheated and . . . it's in a confined space, such as the trailers, they'll high order, and it's my opinion that's how this explosion occurred."

_____

[3]Although the issue was not briefed, we doubt that causing the explosion was even an element of the government's case. <u>See</u> <u>United States v. Ryan</u>, 9 F.3d 660, 668 (8th Cir. 1993), <u>aff'd</u>, 41 F.3d 361 (8th Cir. 1994) (en banc).

The blast cone from the explosion was consistent with this hypothesis, and no more plausible explanation was put forth. The evidence was sufficient for a reasonable jury to find that defendants set the fire that caused the fatal explosions.

Finally, defendants argue that inconsistencies between some of their admissions and other evidence make the admissions unreliable, and also that the evidence only established mere presence or mere association. We conclude these were issues for the jury. "To convict under the aiding and abetting statute, 18 U.S.C § 2, the government need only prove that [each] defendant associated himself with the unlawful venture, participated in it as something he wished to bring about, and by his action sought to make the activity succeed." United States v. Clark, 980 F.2d 1143, 1146 (8th Cir. 1992). Viewing the trial record in the light most favorable to the government, as we must, we conclude the evidence was more than sufficient to convict each defendant of aiding and abetting arson in violation of 18 U.S.C. §§ 844(i) and 2.

## II. Confrontation Clause Issues.

Prior to trial, the district court denied defendants' motions to sever the joint trial based on their contention that introduction of their numerous out-of-court admissions would violate the Sixth Amendment's Confrontation Clause as construed in Bruton. Instead, the court ordered Darlene Edwards's statement redacted to replace inculpatory references to her codefendants with neutral pronouns such as "we," "they," "someone," and "others." The court also approved the government's plan to instruct its witnesses not to mention the names of codefendants when testifying to each defendant's out-of-court admissions. During the trial, the court repeatedly instructed the jury to consider each admission only against the declarant. On appeal, defendants argue their Confrontation Clause rights were seriously compromised by the government's reliance on some fifty-nine witnesses who testified to defendants' various out-of-court admissions. No defendant testified at the trial.

The principles that frame this issue were summarized in <u>Richardson v. Marsh</u>, 481 U.S. 200, 206-07 (1987):

> The right of confrontation includes the right to cross-examine witnesses. Therefore, where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand.
>
> Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions. . . . In Bruton, however, we recognized a narrow exception to this principle: We held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.

In <u>Bruton</u>, a nontestifying codefendant's confession to a postal inspector specifically named petitioner Bruton. The Court held that a jury instruction to consider the confession only against the codefendant was inadequate to protect Bruton's Confrontation Clause rights. "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." 391 U.S. at 135-36. The Court left open the question whether a confession or admission would be admissible against the declarant in a joint trial if it was redacted to eliminate references to codefendants. <u>See</u> 391 U.S. at 133-34 & n.10.

In Richardson, the codefendant's written confession to police was redacted to eliminate all references to respondent Marsh. Observing that the jury is more likely to obey a limiting instruction when the confession is linked to a codefendant only by other trial evidence, the Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211.

Richardson did not involve the common situation we face here -- redactions that refer to joint activity with other culprits but eliminate any specific identification of the declarant's codefendants. The Supreme Court recently considered a variation of this problem in Gray v. Maryland, 118 S. Ct. 1151 (1998). The codefendant's written confession to police was redacted by replacing specific references to petitioner Gray with a blank space or the word "deleted" or "deletion." A police officer read the redacted confession and then testified that after receiving it, he was able to arrest Gray. Distinguishing Richardson, a closely divided Court held that this confession falls within the class of statements to which Bruton's protections apply. "The inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face, in Richardson's words, '*facially* incriminat[es]' the codefendant." 118 S. Ct. at 1157 (emphasis in original). The Court also emphasized the practical aspects of the redaction process:

> Additional redaction of a confession that uses a blank space, the word "delete," or a symbol, however, normally is possible. Consider as an example a portion of the confession before us: The witness who read the confession told the jury that the confession (among other things) said,
>
> "Question: Who was in the group that beat Stacy?

-10-

"Answer: Me, deleted, deleted, and a few other guys."
App. 11.

Why could the witness not, instead, have said:

"Question: Who was in the group that beat Stacey?
"Answer: Me and a few other guys."  118 S. Ct. at 1157.


Defendants argue the government's repeated use of out-of-court admissions that "we" or "they" went to the site to steal, and "we" or "they" set the fire, violated <u>Bruton</u> as construed in <u>Gray</u>.[4]  Neither <u>Richardson</u> nor <u>Gray</u> discussed the admissibility of confessions in which codefendants' names are replaced with a pronoun or similarly neutral word, as in this case.  This court and other circuit courts have consistently upheld such evidence so long as the redacted confession or admission does not facially incriminate or lead the jury directly to a nontestifying declarant's codefendant.  <u>See United States v. Jones</u>, 101 F.3d 1263, 1270 & n.5 (8th Cir. 1996) (use of "we" and "they"); <u>United States v. Williams</u>, 936 F.2d 698, 700-01 (2d Cir. 1991) ("another guy"); <u>United States v. Briscoe</u>, 896 F.2d 1476, 1502 (7th Cir. 1990) ("we");  <u>United States v. Garcia</u>, 836 F.2d 385, 390-91 (8th Cir. 1987) ("someone").  We conclude the district court's decision to admit nontestifying defendant admissions, redacted as to codefendants by the use of pronouns and other neutral words, and accompanied by appropriate limiting instructions, was consistent with this court's decisions in <u>Jones</u> and <u>Garcia</u> and the Supreme Court's recent decision in <u>Gray</u>.

---

[4]Defendants' contention on appeal is that the district court erred in denying motions for severance, separate trials, and mistrials.  These issues are reviewed under an abuse of discretion standard.  <u>See United States v. Donohue</u>, 948 F.2d 438, 444 (8th Cir. 1991).  However, the Supreme Court in <u>Gray</u> treated the threshold question whether the trial court properly construed <u>Bruton</u> and its progeny in admitting redacted out-of-court declarations as an issue of law, and we do likewise.

-11-

Unlike use of the word "deleted," which directs the jury's attention to an obvious redaction, referring to joint activity by use of the pronouns "we" and "they," or by use of indefinite words such as "someone," does not draw attention to the redaction and thus, in most situations, will not be incriminating unless linked to a codefendant by other trial evidence. See Jones, 101 F.3d at 1270. Here, for example, the evidence included references to a large cast of characters from the Marlborough neighborhood who were connected in various ways to the defendants. Some of the admissions inculpated nondefendants, thereby weakening any inference that words such as "they" and "someone" referred to the declarant's codefendants.[5] With improper inferences thus weakened, it was appropriate to rely upon the normal rule that juries are presumed to obey instructions to disregard the evidence as to codefendants. In addition, this is

---

[5]This is illustrated by the key admissions in the videotaped statement of Darlene Edwards, the only transcribed statement to authorities introduced at trial and therefore potentially the most incriminating of the many out-of-court declarations:

> Frank and I had come home. . . . Someone come up and said they'd run out of gas. Wanted to know, could I take them down to get some gas, right? . . . Okay, and I took them down to Quik Trip. . . . The Quik Trip at 85th and 71 Highway. Yeah, they went around. They got some gas. They got in the car. They said the car was up the road. I said, what are you doing up there? They said, well, we're just doing 4-wheeling up in the hills, right? So, we get up there. Like, we're going to go over here and over there, and I said, what are you doing? Well, we're going to steal something. We're going, we're gonna take care of something. I said, well, look, I'm not staying here and playing if you are playing with gasoline. I'm not getting my funky ass blown up . . . and I left them there, period! And then after I had gotten home and gotten in bed. . . . is probably what must have woke Frank up, you know, when I'd gotten undressed and got back in bed.

As in Jones, the use of "they" and "someone" did not violate Bruton because "the manner of presenting the confession and the context [did] not lead the jury directly to the [co]defendant[s]." 101 F.3d at 1271 n.5.

not a situation, like the Court faced in <u>Gray</u>, in which additional redaction is normally possible. When an admission refers to joint activity, it is often impossible to eliminate all references to the existence of other people without distorting the declarant's statement. This was recognized in <u>Gray</u>, where the additional redaction favored -- "Me and a few other guys" -- has precisely the same effect as the redactions used in this case. Because joint trials "play a vital role in the criminal justice system," it is important to adopt workable redaction standards. <u>Richardson</u>, 481 U.S. at 209.

Having concluded that the district court's approach to the overall joint trial and redaction issues was not infected with legal error, we must consider whether the court in implementing that approach abused its discretion in a way that requires a new joint trial or separate trials. First, defendants argue that the government's opening statement and closing argument require a new trial because the prosecutor undid the effect of the limiting instructions by urging the jury to use each defendant's admissions in evaluating codefendants' cases. <u>See</u> <u>Richardson</u>, 481 U.S. at 211; <u>compare</u> <u>Jones</u>, 101 F.3d at 1270 n.4, <u>with</u> <u>United States v. Bennett</u>, 848 F.2d 1134, 1142 (11th Cir. 1988). We disagree. The prosecutor's opening accurately emphasized that each defendant had made out-of-court admissions -- "Each of these defendants told multiple persons on multiple occasions that they did it." In closing, the prosecutor summarized the testimony in the same manner it was presented to the jury -- using neutral pronouns. There was no argument that any out-of-court admission facially incriminated a codefendant, and no argument that was inconsistent with the court's cautionary instructions to consider admissions only against the declarant.

Second, invoking the rule of completeness, defendants argue the district court erred in prohibiting cross-examination to establish that an out-of-court admission was *exculpatory* as to one or more codefendants. For example, one witness testified Richard Brown said "him and a group of people was there at the explosion." The phrase "group of people" was a redaction to avoid incriminating Bryan Sheppard and Skip Sheppard. The court ruled that counsel for Frank Sheppard could not ask the

witness if Brown had mentioned him. This ruling was correct for two reasons. First, the rule of completeness protects only the nontestifying declarant. The rule is violated "only when the [out-of-court] statement in its edited form, while protecting the sixth amendment rights of the co-defendant, effectively distorts the meaning of the statement or excludes information substantially exculpatory *of the nontestifying defendant*." United States v. Smith, 794 F.2d 1333, 1335 (8th Cir.) (emphasis added), cert. denied, 479 U.S. 938 (1986). Second, the rule of completeness does not help Frank Sheppard here because the only reference to him (by omission) was exculpatory, and exculpatory out-of-court declarations are not admissible hearsay, even if they include a statement against the declarant's penal interest. See Williamson v. United States, 512 U.S. 594 (1994); United States v. Ramsey, 999 F.2d 348, 351 (8th Cir. 1993).[6]

There are also practical reasons why codefendants should not be able to invoke the rule of completeness to introduce otherwise inadmissible exculpatory hearsay. Enforcing the rule rigorously often runs the risk of violating an inculpated codefendant's Confrontation Clause rights by leading the jury straight to the conclusion that a redaction referred to him. See United States v. Long, 900 F.2d 1270, 1280 (8th Cir. 1990). Thus, the district court in this multi-defendant trial was appropriately cautious in permitting cross-exam seeking to differentiate among the declarant's codefendants. Defendants were allowed to elicit that nondefendants were named in an admission to support the defense theory that others were responsible for the fire, and to clarify the number of people referred to by a plural pronoun, to negate any inference

---

[6]Darlene Edwards, who as declarant may invoke the rule of completeness, argues the district court violated the rule by excluding a prior statement she gave police in which she denied any involvement in or knowledge of the arson. We disagree. The rule of completeness is limited to writings and only encompasses additional portions of the same statement. Moreover, the rule does not empower a court "to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception." United States v. Woolbright, 831 F.2d 1390, 1395 (8th Cir. 1987).

it might refer to all defendants. Some defendants received the benefit of directly exculpatory statements, such as Darlene Edwards's statement that she left Frank Sheppard at home asleep when she took others to get gasoline, and they were permitted to argue the significance of omissions in the out-of-court declarations. We conclude the district court did not abuse its discretion in the balance it struck between the nontestifying declarants' right to completeness and the nonconfessing defendants' Confrontation Clause rights.

Defendants next argue the district court erred in denying their motions for mistrial on the few occasions when lay witnesses forgot their <u>Bruton</u> instructions and blurted out a codefendant's name instead of replacing it with a neutral pronoun.[7] The government concedes these were mistakes. The district court immediately instructed the jury to disregard the blurted testimony, and it twice ordered the testimony stricken from the record. We have reviewed these instances, individually and cumulatively, and conclude the district court did not abuse its discretion in denying a mistrial.

Finally, it is well-settled that <u>Bruton</u> errors are subject to harmless error analysis. <u>See</u> <u>United States v. Miller</u>, 995 F.2d 865, 867 (8th Cir. 1993); <u>Long</u>, 900 F.2d at 1280; <u>Garcia</u>, 836 F.2d at 391. Darlene Edwards, Richard Brown, and Bryan Sheppard were virtually unaffected by <u>Bruton</u> issues. None of the blurted redaction failures

---

[7]One witness testified that Darlene Edwards said "at one time <u>Frank</u> had made plans" to steal from the construction site, and that Edwards "would tell us about the gas, how she went to get the gas and different things that she did with the <u>other defendants</u>." Another witness testified when asked why he had not reported certain admissions to the police, "it was after me and Richard [Brown] had had a conversation. I didn't believe him. I didn't believe him for one second but he told me at one point that <u>Bryan Sheppard</u> was in on it." Another witness testified that Skip Sheppard said "he and <u>a brother</u> were" at the construction site on the night of the explosion. Another said that when she asked Frank Sheppard why he had not called the police, he said, "I can't turn in <u>my family</u>, <u>my friends</u>." (Emphasis added.)

named Edwards or Brown, and only references to "my family, my friends" and "other defendants" touched on them at all. No defendant objected to the "my family, my friends" mistake, and the district court struck the reference to "other defendants" and reminded the jury to only consider the evidence against the confessing defendant. The one blurted reference to Bryan Sheppard only said he was "in on it," a relatively innocuous error in light of his numerous admissions of involvement. None of these defendants was affected by the district court's limitations on cross-exam, whereas the evidence against these defendants was overwhelming. We conclude any <u>Bruton</u> error was clearly harmless to these three defendants.

Although Frank and Skip Sheppard were more directly affected by the <u>Bruton</u> issues, we conclude any error was harmless to them as well. Two redaction failures arguably affected Frank, but the district court's prompt curative actions reduced any prejudicial impact. Frank and Skip were most affected by the district court's limits on cross-exam, but any prejudice from the restrictions was minor in contrast to the properly admitted evidence. Twelve witnesses testified to admissions by Frank Sheppard, and seven witnesses testified to admissions by Skip. As to each, the admissions were specific, detailed, and consistent.

For all the foregoing reasons, we conclude the district court did not abuse its discretion in denying defendants' various motions for mistrial, new trial, and severance.

### III. Statute of Limitations and Pre-indictment Delay Issues.

The federal statute of limitations for non-capital crimes is five years. <u>See</u> 18 U.S.C. § 3282. The arson occurred in 1988, more than seven years prior to defendants' indictments. There is no limitations period for a capital offense, defined as "any offense punishable by death." 18 U.S.C. § 3281. The arson statute provides that whoever commits arson resulting in death "shall also be subject to . . . the death penalty . . . as provided in section 34 of this title." 18 U.S.C. § 844(i). Defendants argue their

prosecutions are time-barred because the death penalty procedures in 18 U.S.C. § 34 were unconstitutional under Furman v. Georgia, 408 U.S. 238 (1972), until amended in 1994, and therefore defendants could not have been subjected to the death penalty for their 1988 crimes. This argument was rejected in United States v. Manning, 56 F.3d 1188, 1196 (9th Cir. 1995), where the court reasoned that § 3281 "derive[s its] justification from the serious nature of the crime rather than from a concern about, for example, what procedural protections those who face a penalty as grave as death are to receive." We agree with and follow the Manning decision.

Defendants also argue the district court erred in denying their motion to dismiss the indictment because the nine-year pre-indictment delay violated their right to due process. Our cases hold that, to prevail on this claim, defendants have the burden of proving the delay was unreasonable *and* actually, substantially prejudiced the defense. See United States v. McDougal, 133 F.3d 1110, 1113 (8th Cir. 1998); Bennett v. Lockhart, 39 F.3d 848, 851 (8th Cir. 1994). Relying on Doggett v. United States, 505 U.S. 647 (1992), defendants argue the government should have the burden to prove the absence of prejudice. This argument is without merit. Doggett involved a challenge to post-indictment delay under the Speedy Trial Clause of the Sixth Amendment. That Clause "is wholly irrelevant" to a Due Process Clause challenge to a pre-indictment delay. United States v. Lovasco, 431 U.S. 783, 788 (1977); accord United States v. Bischel, 61 F.3d 1429, 1436 (9th Cir. 1995); United States v. Byrd, 31 F.3d 1329, 1339-40 (5th Cir. 1994).

IV. Evidentiary Issues.

A. Bad Acts Evidence. Defendants argue the district court violated Federal Rule of Evidence 404(b) in admitting testimony regarding their prior drug use and thievery. One witness testified: "[Darlene] said they stole machinery and different tools from the construction site before and she sold it in trade for crack cocaine." This testimony was admissible under Rule 404(b) because it was relevant to motive -- the

-17-

government's claim that defendants went to the construction site to steal equipment to sell to buy drugs. Other witnesses testified that defendants' admissions occurred during drug use. Rule 404(b) does not bar evidence that completes the story of the crime or explains the relationship of parties or the circumstances surrounding a particular event. See United States v. Moore, 1998 WL 337961 *5 (8th Cir. 1998). The district court did not abuse its discretion in admitting this kind of background evidence. A jury "cannot be expected to make its decision in a void -- without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984).

Darlene Edwards and Frank Sheppard argue the district court erred in admitting testimony that they admitted burning her car six weeks before the arson to collect insurance proceeds. The government offered this evidence to prove motive -- that these defendants needed money to buy drugs. The district court did not abuse its broad discretion in concluding the prejudicial effect of this evidence did not outweigh its probative value. See United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995) (standard of review).

B. Limits on Cross-Examination. Darlene Edwards argues the district court erred in limiting her cross-exam and impeachment intended to support Edwards's theory that one of the construction site security guards committed the arson to divert attention from the guard's insurance fraud. Bryan Sheppard argues the district court erred in restricting cross-exam regarding the criminal history of various government witnesses. Frank Sheppard argues the district court erred in not allowing cross-exam to impeach a witness by showing that her out-of-court statement that Darlene Edwards had taken a polygraph test was untrue. The district court allowed defense counsel to extensively cross-examine the government's witnesses. The rulings in question were not an abuse of the court's substantial discretion regarding issues of relevance, remoteness in time, and collateral impeachment. See United States v. Caldwell, 88 F.3d 522, 524 (8th Cir. 1996) (standard of review).

C.  Excluded Polygraph Examinations.  Bryan Sheppard and Richard Brown argue the district court erred in excluding favorable results of polygraph examinations without conducting a hearing under Daubert v. Merrell Dow, 509 U.S. 579 (1993).  The record on appeal does not reflect that defendants preserved this issue by offering the exam results into evidence and obtaining a ruling on their admissibility.  If the district court did bar the admission of polygraph results, that ruling cannot be plain error.  See United States v. Scheffer, 118 S. Ct. 1261 (1998).

D. Admission of Victim Photographs.  The district court excluded a number of photographs of the deceased firefighters but admitted four of the less gruesome photographs.  Defendants argue this was error because death was not an element of the crime and the photographs were too prejudicial.  At the time this issue arose at trial, the court had advised counsel that it considered causing the firefighters' deaths to be an element of this crime under 18 U.S.C. § 844(i).  In objecting to the photographs, defense counsel noted our decision to the contrary in United States v. Ryan, 9 F.3d at 668, but did not offer to stipulate that the government need not prove defendants caused the victims' death.  Therefore, the photos were clearly relevant when admitted.  The court did not abuse its discretion in concluding their probative value was not substantially outweighed by the risk of unfair prejudice.  See Fed. R. Evid. 403; Walle v. Sigler, 456 F.2d 1153, 1154-55 (8th Cir. 1972).

E.  Cross-Exam on Failure To Call a Witness.  Richard Brown lived with his grandmother.  His defense was that he was home asleep at the time of the explosions.  His witnesses included a neighbor who testified to seeing him after the second explosion, dressed only in pants, with an elderly woman.  Brown also called his uncle to rebut testimony that Brown's truck was seen speeding down the road moments after the first explosion.  On cross-exam, the uncle acknowledged that Brown's grandmother had been called to testify and had come to the courthouse.  The grandmother never testified, and during closing argument the government drew attention to her by saying, "Why do you need grandma to alibi for you.  Aren't you a big boy now?"  Brown

argues this was improper cross-exam and closing argument warranting a new trial. We disagree. "The prosecutor is free to comment on the failure of the defendant to call an available alibi witness." United States v. Schultz, 698 F.2d 365, 367 (8th Cir. 1983).

F. False Testimony Issues. Bryan Sheppard argues the government violated his right to due process by deliberately or negligently presenting false testimony. A government witness testified that Bryan made admissions at a home in the fall of 1989, a time when he was in prison. The district court denied Bryan's motion to strike this testimony as impossible but allowed defense counsel to effectively impeach the witness as to the date. Later in the trial, the error in the date was confirmed by the admission of jail records. The government argued in closing that the witness was mistaken as to the date but not the substance of the testimony. This episode falls well short of establishing that the government either knowingly elicited false evidence or allowed false evidence to go uncorrected. See Giglio v. United States, 405 U.S. 150, 153 (1972); United States v. Martin, 59 F.3d 767, 770-71 (8th Cir. 1995).

Defendants also argue the government elicited false testimony that batteries were stolen from the construction site. The argument is based upon supposedly "undisputed" testimony of the construction contractor and subcontractor that nothing was ever stolen from the site. However, we agree with the district court that the evidence on this issue was contradictory. The defendants' out-of-court admissions included claims they had successfully stolen items from the site, including batteries. There was also evidence the construction workers did not keep track of used batteries. Thus, defendants failed to establish the government knowingly elicited false testimony on this issue.

V. Other Trial Issues.

A. A Discovery Issue. Defense counsel agreed in the pretrial Omnibus Hearing Report to provide the government, at least five days prior to trial, the names and addresses of their trial witnesses and copies of all statements made by each witness.

Bryan Sheppard's witness list included "[a]ny and all witnesses previously endorsed by the Government." When the government learned that defense counsel had recorded investigatory statements from some government witnesses, it moved to compel production of the statements as required by the Omnibus Hearing Report. Bryan Sheppard objected that these statements were merely for cross-examination and the listing of endorsed government witnesses was mere boiler plate. The district court concluded the statements were within the scope of the Hearing Report and compelled their production, and we denied Bryan's petition for a writ of mandamus on this issue. On appeal, Bryan argues the district court's order to produce violated the Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2. We disagree. It may be that the government would not have been entitled to compulsory discovery of these witness statements. See Fed. R. Crim. P. 16(b)(2), 26.2(a); cf. United States v. White, 750 F.2d 726, 728 (8th Cir. 1984). But that did not bar counsel from agreeing to mutual pretrial discovery in the Omnibus Hearing Report. The district court's order interpreting and enforcing that agreement was not an abuse of its substantial case management discretion.

B.  An Alibi Instruction Issue. Skip Sheppard argues the district court violated his right to have the jury consider a legally and factually supportable defense theory when it denied his requested alibi instruction: "[if], after considering all the evidence, you have a reasonable doubt that defendant was present, then you must find him or her not guilty." See Eighth Circuit Pattern Jury Instruction No. 9.07. The court denied this request on the ground that Sheppard could be convicted of aiding and abetting an arson without being present at the site. There is certainly support for that analysis. See United States v. Agofsky, 20 F.3d 866, 871-72 (8th Cir. 1994). On the other hand, the government's factual theory was that Skip Sheppard actually participated in the arson at the site, and Skip's alibi evidence -- testimony by his ex-girlfriend -- tended to refute that theory. With the merits of the alibi instruction issue rather closely balanced, we reject the contention on appeal for the reasons stated in United States v. Dawn, 897 F.2d 1444, 1450 (8th Cir. 1990): "The alibi defense was argued in closing, the jury

was clearly instructed that the government had to prove all elements of the charge beyond a reasonable doubt, and the evidence against [Skip Sheppard] was relatively strong. The error, if any, was clearly harmless."

C. The Motion to Recuse. Frank Sheppard argues the district court abused its discretion in denying his motion for a new trial and recusal because a pattern of judicial comments and rulings reflected a bias calling into question the overall fairness of the trial. We have reviewed the rulings cited and conclude they do not reflect judicial bias. Nor do they establish that Sheppard was denied a fair trial. See United States v. Turner, 975 F.2d 490, 492-93 (8th Cir. 1992) (standard of review).

## VI. Sentencing Issues.

A. Life Imprisonment. Defendants argue they were improperly sentenced to life in prison under 18 U.S.C. § 844(i) because the firefighters proximately caused their own deaths by approaching the burning trailer despite being warned of explosives. Defendants challenge the district court's finding that the firefighters were not aware of the explosives in the trailers. We review that sentencing finding for clear error. See United States v. Berndt, 86 F.3d 803, 810 (8th Cir. 1996). There was evidence that firefighters called to the construction site for previous fires were cautioned there were explosives on the scene. However, there was conflicting evidence whether the deceased firefighters were warned of explosives in the trailers that exploded. On this record, the court's finding that the firefighters were unaware of the explosives and therefore not negligent in continuing to fight the trailer fire was not clearly erroneous.

B. Downward Departure. The district court applied U.S.S.G. § 2A1.1, the first-degree murder guideline, to determine defendants' base offense level for arson resulting in death. See U.S.S.G. § 2K1.4(c). Under § 2A1.1, the court may depart downward "[i]f the defendant did not cause the death intentionally or knowingly." Richard Brown argues the district court erred in not departing downward for this reason. The court

was aware of its discretion to depart downward.  Therefore, its refusal to depart is not reviewable on appeal.  See United States v. Tocco, 135 F.3d 116, 131 (2d Cir. 1998).

C.  Evidence of Actual Innocence.  Frank Sheppard argues the district court erred at sentencing by not admitting polygraph examination results suggesting he was innocent, and testimony suggesting he was too drunk to have committed the crime.  It is not clear from the sentencing record that this issue was properly preserved.  In any event, the court did not abuse its discretion in excluding evidence of actual innocence at a non-capital sentencing.  Cf. Franklin v. Lynaugh, 487 U.S. 164, 172-74 (1988).

We have carefully considered the other issues and arguments raised by defendants on appeal and conclude they are without merit.  The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.