UNITED STATES

v.

Tyrone WALKER, Walter Diaz, and
Anthony "Tony" Walker,
Defendants.

No. 94–CR–328.

United States District Court,
N.D. New York.

Jan. 2, 1996.

United States Attorney, Binghamton, NY, Miroslav Lovric, Bernard J. Malone, Jr., Asst. U.S. Attys., of counsel, for Government.

Hinman, Howard & Kattell, Binghamton, New York, Albert Millus, of counsel, Ruhnke & Barret, West Orange, NJ, David A. Ruhnke, of counsel, for defendant Tyrone Walker.

Peter Orville, P.C., Vestal, New York, Carl J. Herman, Livingston, New Jersey, for defendant Walter Diaz.

Richard Allen, Binghamton, New York, for defendant Anthony Walker.

## MEMORANDUM

## DECISION & ORDER

McAVOY, Chief Judge.

Defendants Tyrone Walker, Walter Diaz and Anthony Walker have moved for judgments of acquittal under Fed.R.Crim.P. 29. All defendants have joined in each other's motions where applicable.

■ When considering a motion under Rule 29, the court must determine, based upon all of the relevant evidence introduced against a defendant, whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged. *See United States v. Brawer,* 482 F.2d 117, 124–25 (2d Cir.1973); *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984). All reasonable inferences are to be resolved in favor of the prosecution, however, and the trial court is required to view the evidence in the light most favorable to

the government with respect to each element of the offense. *Mariani* at 865.

## I. DISCUSSION:

### A. COUNT ONE: *Continuing Criminal Enterprise:*

Count One of the indictment charged each defendant with conducting a Continuing Criminal Enterprise ("CCE") between November of 1992 through March of 1993, in violation of 21 United States Code § 848(a) & (c) and Title 18, United States Code, Section 2. The Count One CCE charges were dismissed against Walter Diaz on the government's motion at oral argument on these Rule 29 motions. The government has also conceded that there can be no aiding and abetting liability under § 848(c). *See United States v. Amen,* 831 F.2d 373 (2d Cir.1987); *United States v. Benevento,* 836 F.2d 60 (2d Cir.1987) *cert denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988) (a mere employee of the enterprise who did not coordinate or manage five or more individuals in the enterprise could not be convicted of CCE under an aiding & abetting theory).

### 1. Managed, Supervised or Organized Five or More Individuals:

Both Tyrone and Anthony Walker argue that there is insufficient evidence from which the jury could conclude that they managed, supervised or organized five or more individuals, the fourth essential element of engaging in a CCE.

■ A jury should be instructed that the terms "organizer, supervisor or manager" should be given their everyday, ordinary meaning, implying the exercise of power or authority by a person who occupies some position of a management or supervision. *United States v. Scarpa,* 913 F.2d 993, 1007 (2d Cir.1990). A particular defendant need not be the sole or only supervisor or manager of the activities or persons in question, nor have enjoyed precisely the same superior-subordinate relationship with each of the persons allegedly organized, supervised and managed. Nor is personal contact a perquisite to establishing the requisite relationship

between a defendant and an underling. *United States v. Cruz*, 785 F.2d 399, 407 (2d Cir.1986) ("The statute does not require personal contact between the leader and each underling."). Finally, CCE defendants can be organizers, supervisors or managers of others, and still have been organized supervised or managed by their CCE co-defendants. *See United States v. Baker*, 10 F.3d 1374 (9th Cir.1993) ("Because § 848 deals with individual liability, a CCE defendant may be an organizer, supervisor or manager in the predicate offenses underlying his CCE conviction and a subordinate in a predicate offense underlying another's CCE conviction. In other words, if one meets all the statutory requirements individually, he may properly be convicted under § 848 even though he himself was 'managed.'"), *Cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

The Court has reviewed the entire record and preliminarily concluded that there is sufficient evidence in the record, as to both Tyrone and Anthony Walker, from which a rational jury could conclude that the government has satisfied this element of § 848. The Court is continuing to review the record as to each potential managee, supervisee and *organizee* the government has alleged, however, and will issue a more detailed memorandum decision prior to closing arguments as to which individuals may properly be submitted to the jury in satisfaction of this element.

## 2. The "Tentacle" Theory:

■ The government argues that it can satisfy the organization, supervision and management element as to Tyrone Walker by showing that Tyrone's alleged co-entrepreneur, Anthony Walker, managed or supervised five or more individuals, and vice-versa. That is, the government argues that given the nature of a CCE, a defendant is fairly chargeable with organization and supervision by other managing co-defendants within the enterprise, because, in the government's terminology, each manager's "tentacles" embrace every individual acting in furtherance of the enterprise. While the government's position has some force under

certain circumstances, the Court finds that the principle's operation is overstated here. Indeed, left unchecked, the government's position would swallow the statutory requirement that each defendant may only be convicted of "engaging" in a CCE if he has managed, supervised or organized five or more individuals.

■ As stated above, personal contact is not a perquisite to management, supervision and organization, *Cruz*, 785 F.2d at 407. In order to properly charge a defendant with a *co-defendant's* management or supervision, however, the Court is persuaded that the evidence must show that the co-defendant himself acted in some capacity under the management, supervision or organization of the defendant who the government seeks to charge with his co-defendant's supervisees. In other words, the Court will not allow the supervisees of a defendant's *co-equal* in the enterprise to satisfy the supervision element as to that defendant. In order for the government to establish that an individual defendant is fairly chargeable with management of a second defendant's managees, then, the government must show that the second defendant himself was in some respect managed, supervised or organized by the defendant under consideration or, that the defendant in question in some manner *through* his co-defendant, organized individuals that he otherwise had no direct contact with. Absent this requirement that the government show that a defendant's management ran *down* the enterprise's hierarchy through a co-defendant acting as a second-level manager, before charging that defendant with managing a third-level individual with whom he had no direct contact, the Court would be transporting aiding and abetting liability back into the statute under the tentacle theory. Such horizontally derivative liability has no place either in the overall CCE statutory structure, or in satisfying the statute's *primary* essential elements. *Amen,* 831 F.2d at 373; *cf. United States v. Jones,* 763 F.2d 518, 525 (2d Cir.1985) (violation of other narcotics laws on *Pinkerton* basis is an eligible *predicate* for first and second elements); *Baker,* 10 F.3d at 1407 ("there is no basis for imputing *predicate* offenses under *Pinkerton* along a 'horizontal' nexus between

a CCE defendant and [CCE co-defendants] in the same count" unless those co-defendants are charged in an overarching conspiracy in the same indictment); *United States v. Rosenthal*, 793 F.2d 1214, 1226 (11th Cir. 1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987) ("If a defendant personally hires only the foreman, that defendant is still responsible for organizing the individuals hired by the foreman to work as the crew. We find that mere delegation of authority does not detract from the defendant's ultimate status as organizer.").

Applying the foregoing to the instant record, the Court again notes that under certain circumstances, CCE defendants can be organizers, supervisors or managers of others, and still have been organized supervised or managed by their CCE co-defendants. *Baker*, 10 F.3d at 1374. The Court first finds that the evidence at hand provides a sufficient basis from which the jury could conclude that Tyrone Walker and Anthony Walker were *equals* in the alleged CCE's hierarchy. Indeed the government itself argues that, as to the conspiracy, "Tyrone Walker and Anthony Walker stood on about equal footing.... They were partners." (Govt.R. 29 Resp. at 8). The government points to no evidence, however, that as to the CCE Tyrone or Anthony Walker in some way managed, supervised or organized each other, and therefore, through each other, individuals with whom they had no direct contact. Nor is this a case where the evidence shows that a defendant insulated himself from CCE liability by interacting only through a co-defendant and avoiding personal contact with subordinates. In the absence of such a showing, or any showing that either defendant indirectly managed the other's supervisee's through some form of management, organization or supervision of his co-defendant, the Court will not instruct the jury that it can find the management element satisfied as to both defendants if it finds that either defendant managed, supervised or organized five or more individuals.

### 3. Substantial Income or Resources:

■ The law does not prescribe the minimum amount required for "substantial income," but it is not intended to refer to trivial amounts derived from occasional drug sales. "Income" is not limited to profit, but includes gross income or gross receipts and may include money and other things of value, such as controlled substances actually received by the particular defendant. "Income," however, does NOT include anticipated profits. *U.S. v. Bueno–Risquet*, 799 F.2d 804 (2d Cir.1986).

■ The Court finds that the record contains sufficient evidence from which a rational jury could find that the defendants obtained "substantial income" within the meaning of the statute. Certainly the jury could find that the defendants realized a great deal more than the $2,000.00 which the Second Circuit has held could, under certain circumstances, satisfy this element. *See United States v. Losada*, 674 F.2d 167, 173 (2d Cir.1982) ("Even if we were to accept the $2,000 figure suggested by [the defendant] as her income from cocaine sales, that is not so insignificant as to render the statute inapplicable"). Indeed, Wilfred Pettway's testimony alone, if believed, could establish that the defendants dealt in tens of thousands of dollars of narcotics during the CCE's pendency. *Cf. U.S. v. Casamento*, 887 F.2d 1141 (2d Cir.1989) (evidence of narcotics deliveries and evidence of receipt of $10,000. on at least one occasion, supports inference that defendants dealt in "tens of thousands of. dollars of narcotics"), *cert. denied* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

In light of these showings, "the practical meaning of 'substantial income' [is] a question for the *trier of fact.*" *United States v. Medina*, 940 F.2d 1247, 1251 (9th Cir.1991). Defendants motions for dismissal of Count One on this basis are DENIED.

### B. COUNT TWO: CCE—Murder:

Count Two of the indictment charges that on February 18, 1993, the defendants intentionally killed Michael Monsour while engaging in and working in furtherance of the Count One Continuing Criminal Enterprise, in violation of 21 United States Code § 848(e)(1)(A) and 18 U.S.C. § 2. Walter Diaz and Anthony Walker claim that, even

assuming *arguendo* that they played some role in the killing, under the facts presented at trial no rational jury could conclude that they are responsible for the *intentional* killing of Michael Monsour.

All three defendants also seek dismissal of this count arguing that even again assuming that the scenario the government has attempted to prove is accurate, there is insufficient evidence that the murder was committed *in furtherance of* the CCE.

### 1. Intentional Killing & Aiding & Abetting Liability:

While the Second Circuit has held that aiding and abetting liability is inapplicable to violations under § 848, the Circuit was clearly speaking only to the substantive violation of "engaging" in a CCE under §§ 848(a) & (c). *See Amen*, 831 F.2d at 373; *Benevento*, 836 F.2d at 60. Indeed in all sections but § 848(e), the statute speaks only in terms of "*engaging*" in a CCE. *See, i.e.* § 848(a) ("Any person who *engages in* a CCE shall ...") (emphasis added); § 848(c) ("CCE Defined: A person *is engaged in* a CCE if ...") (emphasis added).

■■ Under 848(e), however, the death penalty is available against "any person engaged in *or working in furtherance of the CCE* ... who intentionally kills...." The Court finds that inclusion of the additional "or working in furtherance of" language indicates a statutory intent to broaden the scope of liability under § 848(e), beyond liability only for those who kill while engaging in a CCE, (*e.g.* those who are convicted of § 848(a) & (c) violations), and extending to all who kill while working in furtherance of a CCE. To hold otherwise would render the "working in furtherance" of language surplusage. It follows then, that even though Walter Diaz no longer faces a charge of engaging in a CCE under § 848(a) & (c), under a proper showing he may still be liable for intentional killing under § 848(e). The same result attaches should Tyrone Walker or Anthony Walker be acquitted of the § 848(a) & (c) charges: they would still face the possibility of liability under § 848(e)— with the caveat that at least one defendant must be found guilty of engaging in the CCE

charged in the indictment, for without a conviction in that regard, it could not be said that any defendant acted in furtherance thereof.

■■ The Court also finds that both principals who intentionally kill in furtherance of a CCE, and those who aid and abet those principals in violation of 18 U.S.C. § 2, may be liable for CCE–murder. First, there is no indication that Congress intended to exclude § 2 liability and, to the contrary, this provision expressly speaks in the language of aiding and abetting liability. *See* 21 U.S.C. § 848(e)(1) ("any person ... who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual"). Furthermore, § 848(m) of the CCE statute (the provisions of which are applicable to violations of § 848(e)), provides as a mitigating factor that "the defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor." While it is possible to conceive of non-aiding and abetting scenarios wherein this mitigating factor could be given effect, the more straightforward reading of this plain statutory language, and the overall statutory scheme, leads the Court to conclude that a defendant may incur aiding abetting liability under § 848(e)(1)(A). *Cf. U.S. v. Villarreal,* 963 F.2d 725 (5th Cir.) (non-kingpin defendant guilty of aiding & abetting murder under the alternative section of § 848(e), (§ 848(e)(1)(B), "killing local law enforcement officer in furtherance of narcotics trafficking offense")), *cert. denied,* 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992).

■■ Of course to establish liability under § 2 in the Second Circuit, the government must establish: i. that the underlying crime was committed; ii. that the underlying crime was committed by someone other than the defendant being considered; iii. that the person charged as an aider and abettor committed some voluntary act in furtherance of the crime; and iv. that act was committed with the specific intent that the act bring about the crime charged. *United States v. Aiello,* 864 F.2d 257, 263 (2d Cir.1988). Assuming that the government establishes the

first two elements, the jury must be instructed that they can only impose aiding and abetting liability on a co-defendant who committed a voluntary act in furtherance of the intentional killing charged, and who shared the specific intent to intentionally kill.

■ There is, however, some evidence in the record of both elements as against both Walter Diaz and Tyrone Walker for purposes of both Count Two and Count Three. If the government's scenario is believed, the jury could find that Walter Diaz was the "shorter one" who directly undertook to aid and abet the crime charged through the direct assistance he provided the shooter at the murder scene. As to Anthony Walker, a rational jury could find from the record both that he undertook to provide an alibi for Tyrone Walker and Walter Diaz (albeit a particularly inscrutable alibi) and that he provided the weapon which was used to accomplish the killing. As to the fourth element of shared specific intent, Pettway's testimony that Tyrone Walker announced in the presence of these two defendants that he intended to kill Monsour, (Tr. at 3373), provides a sufficient basis for the jury to conclude that all three defendants acted with a shared intent for purposes of the intentional killing alleged in both Counts Two and Three.

### 2. "In Furtherance Of":

■ The Court agrees with the defendants' arguments that the government must do more than establish that a particular defendant killed intentionally: the government must show that a defendant intentionally killed while *"engaging in, or working in furtherance of,"* the continuing criminal enterprise. *See* 21 U.S.C. § 848(e)(1)(A). The statutory language clearly implies that the government must prove that the killing was related in some meaningful way to the affairs of the continuing criminal enterprise and the Court will charge the jury that it must so find. On the record before it, however, the Court finds that a rational jury could conclude on at least one basis that the intentional killing alleged here was committed in furtherance of the alleged CCE, (*i.e.* that the killing was undertaken to secure drugs and money to be used in furtherance of the al-

leged CCE). It follows then that defendants' motion to dismiss Count Two on this basis is, likewise, denied.

### C. COUNT THREE: Conspiracy—Murder:

Count Three of the indictment charges that, on or about February 18, 1993, the defendants intentionally killed Michael Monsour while engaging in an offense punishable under Title 21 United States Code § 841(b)(1)(A), in violation of the second prong of 21 United States Code § 848(e)(1)(A) and 18 United States Code Section 2. As a predicate for this Count, the government has charged the defendants with participating in a conspiracy punishable under § 841(b)(1)(A). In order to establish guilt as to this second prong, the government must show not only that the defendants are guilty of a narcotics conspiracy, and that the defendants intentionally killed Michael Monsour while engaging in that conspiracy, but that the conspiracy involved at least five kilograms or more of cocaine, or fifty grams or more of cocaine base.

First, Tyrone Walker and Walter Diaz argue that the distinction Congress has drawn between powder cocaine and cocaine base is irrational, arbitrary, and capricious, and as such violates equal protection and due process, and in no event can be used as a basis for meaningfully distinguishing between narcotics conspirators who are eligible, and those who are ineligible, for capital punishment. The Court RESERVES on this challenge and hereby grants these defendants leave to renew this aspect of their motions post-verdict, in the event that the issue is not moot.

All three defendants also argue that the single, long-term conspiracy alleged in the indictment never existed: that in fact three separate conspiracies, more limited in duration, scope and membership, have been established. Finally, all three defendants argue that, even assuming the existence of the overarching conspiracy the government has alleged, no rational jury could find that the conspiracy involved the predicate amounts of drugs necessary to establish a violation punishable under 21 U.S.C. § 841(b)(1)(A).

### 1. Multiple Conspiracies:

█ Defendants have presented a fully formed and well supported theory of the case by which the jury could conclude that not one, but three conspiracies, were formed and dissolved during the period the government alleges that a single conspiracy operated. Defendants argue that their multiple-conspiracy theory justifies a judgment of acquittal on Count Three. *See United States v. Durades,* 607 F.2d 818 (9th Cir.1979).

█ While a reasonable juror could conclude beyond a reasonable doubt that the multiple-conspiracy theory is correct, such arguments do not establish that a juror could *not* conclude that the government's single conspiracy allegations have been established beyond a reasonable doubt. Furthermore, much of the same evidence that the defendants have parsed into three conspiracies also supports a reasonable jury's conclusion that a single conspiracy existed. The Court notes in this regard that a single conspiracy is not necessarily transposed into multiple conspiracies simply by lapse of time, change of membership or a shifting emphasis on its locale of operations. *United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir. 1979). Whether or not the proof at trial establishes *single* versus *multiple* conspiracies is one that should be committed to the province of a properly instructed jury. *United States v. Nersesian,* 824 F.2d 1294, 1302 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). Defendants' motions for a judgment of acquittal as to Count Three on this basis are DENIED.

On this basis also, defendants motion to dismiss the Narcotics Conspiracy charges in Count Four of the indictment because only multiple conspiracies have been proven is likewise, DENIED.

### 2. Predicate Weights:

█ The Court finds that in its totality, the testimony of Sirena Atkins, Kenneth Richardson, Michael Sussman and Wilfred Pettway alone provides a sufficient evidentiary basis from which a reasonable juror could conclude beyond a reasonable doubt that the conspiracy charged in Counts Three and Four involved at least five kilograms or more of cocaine, or fifty grams or more of cocaine base. Defendants' motions to dismiss Count Three on this basis is, therefore, DENIED.

### D. COUNTS SIX, SEVEN, EIGHT & NINE—*Firearms Counts:*

█ All three defendants, and Anthony Walker in particular, seek dismissal of the firearms charges against them in Counts Six, Seven, Eight and Nine of the indictment.[1]

Every appellate court which has considered the issue has found that *Pinkerton* liability applies to these firearms charges, even if the use of the firearm was not the objective of the conspiracy. *See i.e. United States v. Mendoza–Burciaga,* 981 F.2d 192, 198 (5th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993); *See also, United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988) (approving instruction for imputation of liability for possession of firearms to a drug conspirator who was not the actual user or carrier), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989); *U.S. v. Batt,* 811 F.Supp. 625, 626, 628 (D.Kan.1993) (Defendant convicted for aiding and abetting carrying of a firearm by a codefendant).

In light of *Pinkerton's* applicability, and mindful of the doctrines of joint and constructive possession that are also applicable to these charges, the Court finds that there is sufficient evidence in the record from which a rational jury could conclude that all three defendants are guilty of the firearms Counts challenged herein. Defendants' mo-

---

1. Counts Six and Seven charge the defendants with knowingly using and carrying firearms during and in relation to the commission of a crime of violence or a drug trafficking crime, in violation of Title 18 United States Code § 924(c)(1) and Section 2. Count Six concerns a .22 Caliber Ruger; Count Seven concerns the .38 caliber Security Industries revolver.

Counts Eight and Nine of the indictment charge the defendants with possessing a firearm, in and affecting commerce, after having each been previously convicted of a controlled substance felony offense punishable by a term exceeding one year, in violation of Title 18 United States Code § 922(g) and § 2. Count Eight concerns a .22 Caliber Ruger; Count Nine concerns a .38 caliber Security Industries revolver.

tions under Rule 29 for dismissal of the firearms Counts are, likewise, DENIED.

## II. CONCLUSION:

Defendants' Rule 29 motions seeking dismissal of Counts Two and Four and Counts Six through Nine are, in all respects, **DE-NIED;**

The Court **RESERVES** on Tyrone Walker and Walter Diaz's Rule 29 Motions seeking preclusion of imposition of the death penalty based on application of Title 21 U.S.C. § 841(b)(1)(A)'s cocaine base enhancement under Count Three. In all other respects, defendants' Rule 29 motions challenging the sufficiency of evidence underlying Count Three are **DENIED;**

Defendants Tyrone and Anthony Walker's Rule 29 motions challenging the sufficiency of the evidence underlying Count One are **DENIED,** except to the extent that the Court **RESERVES** decision as to which individuals the government may present to the jury as potential managees, supervisees and organizees within the meaning of § 848(c)(2)(A);

In all other respects, defendants' challenges to the sufficiency of the evidence underlying all indictment Counts are **DENIED.**

**IT IS SO ORDERED.**