08-4640-cr
United States v. Caraballo

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: September 21, 2009    Decided: November 5, 2009)

Docket No. 08-4640-cr

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

MARTIN AGUILAR, also known as Sassy, JEFFREY TAYLOR, QUINCY MARTINEZ, ANGEL
NAVARRO, also known as Prep, ANTHONY PEREZ, also known as Little Anthony, EDWIN
AGUILAR, also known as Lucky, ARMANDO MOLINA, ERIC ROSARIO, also known as Buzz,

*Defendants,*

GILBERTO CARABALLO, also known as Carlos Caraballo, also known as Anthony
Rodriguez,

*Defendant-Appellant.*

_____

Before:

LEVAL, RAGGI, and LIVINGSTON, *Circuit Judges.*

Appeal from a judgment of conviction entered after a jury trial in the United States

District Court for the Eastern District of New York (Raymond J. Dearie, *Chief Judge*).

Defendant challenges the sufficiency of the evidence supporting his conviction under 21 U.S.C. § 848(e)(1)(A) for killing Jose Fernandez while engaging in a narcotics offense punishable under 21 U.S.C. § 841(b)(1)(A). We conclude that evidence demonstrating that Caraballo induced his drug associates to participate in Fernandez's murder through promises to forgive drug-related debts and to engage in future drug transactions was sufficient to sustain his § 848(e)(1)(A) conviction.

AFFIRMED.

———————————

JAMES E. NEUMAN (David Stern, *on the brief*), New York, New York, *for Defendant-Appellant*.

DAVID BITKOWER, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *on behalf of* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellee*.

———————————

REENA RAGGI, *Circuit Judge*:

Defendant Gilberto Caraballo appeals from a judgment of conviction entered after a jury trial in the United States District Court for the Eastern District of New York (Raymond J. Dearie, Chief Judge) at which he was found guilty on five counts relating to the murder of Jose Fernandez, see 18 U.S.C. § 1958(a) (substantive and conspiratorial murder-for-hire); id. § 373(a) (solicitation to commit a crime of violence); id. § 924(c) (use of a firearm in relation to a crime of violence); 21 U.S.C. § 848(e)(1)(A) (murder while engaging in a

2

narcotics offense); one count relating to the murder of Edward Cortes, see id. (murder while engaging in a narcotics offense); conspiracy to distribute five kilograms or more of cocaine hydrochloride and fifty grams or more of cocaine base ("crack"), see id. §§ 841(b)(1)(A), 846; and two counts of firearm possession, see 18 U.S.C. § 922(g) (felon in possession of a firearm); id. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime). Caraballo was sentenced principally to five concurrent terms of life imprisonment and is currently serving that sentence.

On appeal, Caraballo challenges (1) the sufficiency of the evidence supporting his § 848(e)(1)(A) conviction for the murder of Jose Fernandez,[1] as well as (2) the district court's failure (a) to dismiss a juror for cause after the start of trial, and (b) to give a multiple-conspiracies charge. We discuss and reject Caraballo's claims of error by the district court in a summary order issued today. See United States v. Caraballo, --- F. App'x ---- (2d Cir. 2009). In this opinion, we address his sufficiency challenge. We conclude that the "substantive connection" requirement implied in the "engaging in" element of § 848(e)(1)(A) can be satisfied not only by proof that at least one of the purposes of the killing was related to an ongoing drug conspiracy, as we held in United States v. Desinor, 525 F.3d 193, 202 (2d Cir. 2008), but also by proof that the defendant used his position in or control over such a conspiracy to facilitate the murder. The trial evidence in this case

_____

[1] Caraballo does not challenge the sufficiency of the evidence supporting his § 848(e)(1)(A) conviction for the murder of Edward Cortes or the sufficiency of the evidence supporting the other seven counts of conviction.

demonstrated that Caraballo used his position as a supplier in the charged drug conspiracy to induce confederates to participate in Fernandez's murder, promising to forgive past drug debts and to supply drugs in the future. This was sufficient to sustain the challenged § 848(e)(1)(A) conviction.

Thus, for the reasons stated in this opinion and the contemporaneous summary order, we affirm Caraballo's judgment of conviction.

## I.    **Background**

Caraballo's conviction was secured following a lengthy trial at which the government sought, but did not ultimately obtain, death sentences for the murders of Jose Fernandez and Edward Cortes. We here describe only those facts relevant to Caraballo's sufficiency challenge to his § 848(e)(1)(A) conviction for the Fernandez murder. In doing so, we view the evidence, as we must, in the light most favorable to the government. See United States v. Williams, 558 F.3d 166, 175 (2d Cir. 2009).

### A.    The Narcotics Conspiracy

Caraballo was charged with killing Jose Fernandez "while engaged in an offense punishable under section 841(b)(1)(A) of Title 21 of the United States Code," specifically, a conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of crack. United States v. Caraballo, No. 01 Cr. 01367 (S-5), Superseding Indictment at 3 (Jan. 28, 2005) (citing 21 U.S.C. § 848(e)(1)(A)). Caraballo does not challenge the sufficiency of the evidence supporting his conviction on the underlying narcotics conspiracy, nor could he. The

4

evidence overwhelmingly demonstrated that between January 1989 and December 2001, Caraballo and various confederates, including Quincy Martinez, Martin Aguilar, Armando Molina, and Eric Rosario, conspired to distribute and possess with intent to distribute large quantities of cocaine and crack in violation of 21 U.S.C. § 841(b)(1)(A). See id. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

The evidence further demonstrated that Caraballo was the conspiracy's wholesale supplier, providing drugs either through direct sales or on consignment to confederates who sold (or arranged for the sale of) those drugs on the street, principally in Sunset Park, Brooklyn. Among the persons to whom Caraballo supplied drugs was Molina who, at various times, employed Martinez, Rosario, and Fernandez as street-level dealers. After a falling-out with Molina, Caraballo began supplying drugs to Fernandez on consignment. Caraballo likewise supplied drugs on consignment to co-defendant Aguilar and Aguilar's associate, Jeffrey Taylor. Caraballo ceased providing drugs to Aguilar in September 2000 after Aguilar failed to pay his debts and, along with Taylor, robbed one of Caraballo's drug associates.

B.    The Murder of Jose Fernandez

Co-conspirator Quincy Martinez had been dating Fernandez, also known as "Tris," for more than ten years when, in September 2000, she began a romantic relationship with

5

Caraballo. Apparently, Fernandez often physically abused Martinez, and, on several occasions in the fall of 2000, Caraballo advised Martinez that he could "get rid" of Fernandez. See Trial Tr. at 2506, 2596-97. On December 7, 2000, following a "big fight" between Martinez and Fernandez, Martinez told Caraballo that he should "do it," i.e., "murder Tris," id. at 2600-04. Caraballo responded, "say no more." Id. at 2604.

Caraballo had, in fact, been planning Fernandez's murder for some time. In October 2000, Caraballo solicited his drug confederate Aguilar to kill Fernandez, promising in return to forgive Aguilar's drug debts and to resume supplying drugs to him on consignment. Aguilar's drug-dealing partner Taylor concluded that he would "double [his own drug] sales" if Aguilar's line of credit with Caraballo was reopened, and so he too agreed to participate in the Fernandez murder in exchange for $5,000 in cash or drugs. Id. at 1665-66. Taylor's participation was central to Caraballo's plan: Taylor worked as a maintenance man in Green-Wood Cemetery in Sunset Park, which Caraballo identified as a convenient place to hide Fernandez's dead body.

Aguilar and Taylor knew that Caraballo wanted Fernandez killed because of his relationship with Martinez. Taylor told Aguilar that this was a "stupid reason to kill Tris," but Aguilar explained: "Who cares? It's not our business. I'll get this done and everything's squashed," i.e., all of Aguilar's problems with Caraballo would be resolved and they could resume their profitable drug distribution arrangement with Caraballo. Id. at 1676.

On the morning of December 9, 2000, shortly after Martinez gave her consent to

6

Fernandez's murder, Caraballo, Aguilar, and Taylor drove Caraballo's van to Fernandez's home. Fernandez had been told that the group was going to Green-Wood Cemetery to steal marble. Once Fernandez was in the van, Caraballo began driving, whereupon Aguilar put his arm around Fernandez and shot him under the chin. Fernandez began screaming, prompting Aguilar to shoot Fernandez again, in the temple. Although Fernandez fell to the floor, he was not yet dead. Indeed, he attempted to escape the van, but Aguilar pulled him back inside. Caraballo then handed Aguilar an automatic pistol, and Aguilar fired several more shots into Fernandez's head and back, finally killing him.

Fernandez's dead body remained in Caraballo's van, parked overnight in his driveway. The next day, Taylor and Aguilar drove the vehicle to Green-Wood Cemetery and there dropped Fernandez's body down a remote storm drain, as previously agreed with Caraballo. As promised, Caraballo thereafter gave Taylor approximately $5,000 worth of cocaine and one hundred ecstasy pills for his role in the murder. Caraballo also forgave Aguilar's drug debt and arranged for him and Taylor to receive drugs on consignment from one of Caraballo's associates.

C.      The Jury Charge

With compelling evidence adduced that Caraballo was a participant in both the charged narcotics distribution conspiracy and the murder of Jose Fernandez, defendant's sufficiency challenge reduces to a single issue: did Caraballo commit the murder while "engaging in" the charged drug conspiracy? 21 U.S.C. § 848(e)(1)(A). On this element of

7

§ 848(e)(1)(A), the government requested that the jury be charged as follows:

> [T]he government must establish that the defendant intentionally killed Jose Fernandez while engaging in the drug conspiracy charged in Count Seven. The term "while engaging in" means more than coincidence in time with a drug conspiracy. It requires not only that the crime occur during the time period covered by the drug conspiracy, but also that the killing be related in some meaningful way to the drug conspiracy. Moreover, the defendant's participation in the killing must be related to the drug conspiracy.

> You may find that the killing was related to the drug conspiracy if you find that there was a connection between the defendant's role in the killing and his participation in the drug conspiracy. For example, if you find, as the government has alleged, that the defendant knowingly and intentionally killed or counseled, commanded, induced, procured, or caused the intentional killing of Jose Fernandez by using his access to the conspiracy's drugs or a drug debt that arose during the conspiracy to recruit others in furtherance of the murder scheme, this element . . . would be satisfied.

Gov. Request to Charge at 37-38. With exceptions not relevant here, Caraballo's counsel "generally join[ed]" in the government's proposed instructions. Letter from David Stern to Hon. Raymond J. Dearie at 1 (Feb. 21, 2008). Nevertheless, the court used only the first proposed paragraph in its charge to the jury, omitting the second without objection from either side.

### D. Judgment and Appeal

The jury found Caraballo guilty of the nine crimes detailed above, see supra at **[2-3]**, including the § 848(e)(1)(A) charge for killing Jose Fernandez. The jury declined to impose the death penalty, and the district court sentenced Caraballo principally to five concurrent terms of life imprisonment. A judgment of conviction reflecting that sentence was entered

8

on September 15, 2008. Caraballo timely filed notice of this appeal.

## II. Discussion

### A. Caraballo's Sufficiency Challenge and Standard of Review

Caraballo contends that his § 848(e)(1)(A) conviction for the murder of Jose Fernandez cannot stand because the evidence was insufficient as a matter of law to prove that he committed this murder while "engaging in an offense punishable under [21 U.S.C. §] 841(b)(1)(A)."[2] Relying on United States v. Desinor, in which this court observed that the "engaging in" element of § 848(e)(1)(A) did not require the government to prove that a drug-related motive was the sole, primary, or most important reason for a killing "as long as it was one purpose," 525 F.3d at 202, Caraballo submits that the trial evidence in this case was insufficient to satisfy even this modest requirement because his "sole motivation" for the Fernandez murder was "his romantic relationship" with Quincy Martinez, a circumstance unrelated to the charged drug distribution conspiracy, Appellant's Br. at 38-39.

The rule of constitutional sufficiency derived from the Due Process Clause instructs that a conviction cannot be obtained "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged." In re Winship, 397 U.S. 358, 364 (1970).

---

[2] Caraballo does not challenge the charge given to the jury, and properly so given that his counsel both joined in the government's requested charge – which was premised on precisely the theory Caraballo now challenges on appeal – and failed to object to the charge as given by the district court. See United States v. Hertular, 562 F.3d 433, 444 (2d Cir. 2009) ("[A] defendant who has invited a challenged charge has waived any right to appellate review." (internal quotation marks omitted)); see also Fed. R. Crim. P. 30(d) (providing that failure to object to jury instruction limits appellate review to plain error).

9

A defendant raising a sufficiency challenge nevertheless bears a heavy burden because a reviewing court must consider the evidence "in the light most favorable to the prosecution" and uphold the conviction if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original); <u>accord</u> <u>United States v. Jones</u>, 531 F.3d 163, 168 (2d Cir. 2008).

Applying these principles to this case, we conclude that Caraballo's sufficiency challenge fails because proof that the purpose of a killing was related to a defendant's drug activities is not the only means of satisfying the "engaging in" element of § 848(e)(1)(A). Here, a rational jury could find that element established by evidence that Caraballo used his position in the charged drug conspiracy to effect the Fernandez murder, specifically, by inducing drug confederates to participate in the killing through promises to forgive drug debts and to supply drugs in the future.

B.    <u>Statutory Text and the "Substantive Connection" Requirement</u>

Before considering Caraballo's argument that a killing must further some drug-related purpose to support a § 848(e)(1)(A) conviction, we review the statutory text, considering the "ordinary or natural meaning" of the words chosen by Congress, as well as the "placement and purpose" of those words "in the statutory scheme." <u>Bailey v. United States</u>, 516 U.S. 137, 145 (1995) (internal quotation marks omitted). We then discuss the judicial gloss on that text, including our recent decisions regarding the "engaging in" element of

10

§ 848(e)(1)(A).

               1.       The Statutory Text

Section 848(e) provides, in relevant part, as follows:

(1) In addition to the other penalties set forth in this section –

> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death . . . .

21 U.S.C. § 848(e)(1)(A).

Upon a literal reading of the statute, then, a § 848(e)(1)(A) offense can be committed in one of three ways. First, such an offense is committed when a person kills while "engaging in . . . a continuing criminal enterprise." Id. Section 848(c) specifically defines how one "engage[s] in a continuing criminal enterprise," namely, by committing "a continuing series" of felony drug crimes "in concert with five or more other persons" with respect to whom the defendant occupies a "position of management" and from which the defendant "obtains substantial income or resources." Id. § 848(c); see Garrett v. United States, 471 U.S. 773, 781 (1985). Those fitting this definition are commonly referred to as drug "kingpins." See, e.g., Chapman v. United States, 500 U.S. 453, 467 (1991); United States v. Roman, 870 F.2d 65, 75 (2d Cir. 1989).

11

Second, a § 848(e)(1)(A) offense is committed when a person kills while "working in furtherance of a continuing criminal enterprise." This phrase is not statutorily defined, but, in accordance with settled principles of interpretation, courts have given the phrase its "commonly understood meaning," i.e., "working to promote or advance the interests of a continuing criminal enterprise." United States v. Cooper, 19 F.3d 1154, 1165 (7th Cir. 1994); accord United States v. McCullah, 76 F.3d 1087, 1102-03 (10th Cir. 1996); United States v. Jones, 101 F.3d 1263, 1266-67 (8th Cir. 1996). This language signals Congress's "intent to broaden the scope of liability under § 848(e), beyond liability only for" homicidal drug kingpins – a relatively limited class of high-level drug traffickers – "to all who kill while working in furtherance of a [continuing criminal enterprise]," United States v. Walker, 912 F. Supp. 646, 652 (N.D.N.Y. 1996), aff'd 142 F.3d 103 (2d Cir. 1998), including "hired henchmen . . . who commit murder to further a drug enterprise in which they may not otherwise be intimately involved," United States v. McCullah, 76 F.3d at 1103; accord United States v. Ray, 238 F.3d 828, 833 (7th Cir. 2001).

Third and finally, a § 848(e)(1)(A) offense is committed when a person kills while "engaging in an offense punishable under section 841(b)(1)(A) . . . or section 960(b)(1)" of Title 21, e.g., while manufacturing, distributing, or importing large quantities of drugs, see id. §§ 841(b)(1)(A), 960(b)(1), or conspiring to do so. As noted, Caraballo was convicted of violating this prong of § 848(e)(1)(A), and he does not argue that the government failed to prove that the predicate drug conspiracy was ongoing at the time he and his confederates

12

killed Fernandez.

###### 2. The "Substantive Connection" Requirement

Section 848(e) was enacted as part of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7001, 102 Stat. 4181, 4387-88. As prosecutions commenced under this provision, a question promptly arose not expressly answered by the plain text: whether the killing in question must be related in some way to the continuing criminal enterprise or drug offense that the defendant is charged with "engaging in" or "working in furtherance of," or whether it is sufficient that the killing occur contemporaneously with the conduct specified in the statute. Courts universally concluded that a substantive, and not merely temporal, connection is required in order to sustain a conviction under § 848(e)(1)(A). See, e.g., United States v. Jones, 101 F.3d at 1267 (requiring "a substantive connection between the killing and the [continuing criminal enterprise]"); United States v. Tipton, 90 F.3d 861, 887 n.13 (4th Cir. 1996) ("[A] substantive connection [between the murder and the drug offense] must be implied as an essential element of § 848(e)."); United States v. Chandler, 996 F.2d 1073, 1096 (11th Cir. 1993) (same); United States v. Tidwell, No. Civ. A. 94-CR-353, 1995 WL 764077, at *5 (E.D. Pa. Dec. 22, 1995) (same); United States v. Pitera, 795 F. Supp. 546, 554 (E.D.N.Y. 1992) (same); United States v. Whiting, 771 F. Supp. 476, 477 (D. Mass. 1991) (same).

Courts required a "substantive connection" between the defendant's drug activities and the charged killing in part to address the concern that, absent such a requirement,

13

§ 848(e)(1)(A) would be subject to constitutional challenge on Commerce Clause grounds. See United States v. Jin Fuey Moy, 241 U.S. 394, 401 (1916) (Holmes, J.) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."); United States v. Martinez-Martinez, No. 01 Cr. 307, 2001 WL 1287040, at *2 (S.D.N.Y. Oct. 24, 2001) (noting that requiring relationship between drug conspiracy and killing "avoids . . . potential constitutional infirmities" under United States v. Lopez, 514 U.S. 549 (1995)); United States v. Tidwell, 1995 WL 764077, at *3-5 (analyzing defendant's Lopez challenge to § 848(e)(1)(A) and concluding that "a nexus requirement between the murder and the continuing criminal enterprise" must be implied); United States v. Pitera, 795 F. Supp. at 554 (observing, pre-Lopez, that "prosecution of a drug kingpin who killed his spouse in a domestic dispute unrelated to his drug dealing" would be "jurisdictionally suspect"); see also United States v. Walker, 142 F.3d at 111 (rejecting defendant's Lopez challenge to § 848(e)(1)(A) in light of Congress's findings, codified at 21 U.S.C. § 801, that "local narcotics activity substantially affects interstate commerce"); United States v. Wall, 92 F.3d 1444, 1461 n.20 (6th Cir. 1996) (citing with approval case interpreting § 848(e)(1)(A) to avoid "commerce power difficulties"); cf. United States v. Barrett, 496 F.3d 1079, 1120 (10th Cir. 2007) (rejecting Commerce Clause challenge to § 848(e)(1)(B) charge because "[a]n intentional killing in violation of this statute . . . is intertwined with the commission of an underlying federal drug trafficking crime"). In addition, the substantive connection

14

requirement comports with the statutory structure, namely, the placement of § 848(e) within the Controlled Substances Act. See United States v. Walker, 142 F.3d at 111 (noting this placement). Further, the legislative history of the Anti-Drug Abuse Act demonstrates that both proponents and opponents of the legislation recognized that the statute was designed to target drug-related killings. See, e.g., 134 Cong. Rec. 32,638 (Oct. 21, 1988) (statement of Sen. McConnell) ("The drug bill also authorizes the death penalty in drug-related killings."); id. at 32,649 (statement of Sen. D'Amato) (describing § 848(e) and advocating "[t]he death penalty for drug-related killings"); id. at 33,269 (statement of Rep. Hayes) ("I am opposed to the provision which would provide for a Federal death penalty for drug related murders."); id. at 33,274 (statement of Rep. Vento) ("[T]he numerous arguments against the death penalty do not lose their merit simply because the nature of the crime is drug-related rather than non-drug-related.").[3]

This court has had three prior opportunities to address the nature of the required substantive connection between the killing and the drug offense under § 848(e)(1)(A). In United States v. Walker, we upheld a § 848(e)(1)(A) conviction for killing while working in

---

[3] As both courts and commentators have noted, the death penalty provisions of the Anti-Drug Abuse Act were not given committee consideration but, rather, were enacted "through introduction, debate, and amendment on the floor" of Congress. Peggy M. Tobolowsky, Drugs and Death: Congress Authorizes the Death Penalty for Certain Drug-Related Murders, 18 J. CONTEMP. L. 47, 56 n.46 (1992); see also United States v. Pretlow, 779 F. Supp. 758, 764 n.4 (D.N.J. 1991) (citing sources noting that statute was enacted without prior consideration by legislative committees). The available legislative history is thus limited.

furtherance of a continuing criminal enterprise in the face of the defendant's "assert[ion] that the evidence was insufficient to show that the [charged] murder was related to any continuing criminal enterprise or drug conspiracy." 142 F.3d at 112. In doing so, we did not address the nature of the required relationship; we concluded simply that the challenged conviction was adequately supported by evidence that "the purpose of the murder was to obtain drugs and money to be used in furtherance of the continuing criminal enterprise." Id. at 112-13. In United States v. Desinor, we upheld a § 848(e)(1)(A) conviction for killing while engaging in a narcotics conspiracy, and we rejected defendant's contention that the government was required to prove that "'a motive meaningfully related to the . . . narcotics conspiracy was at least as important as any other influencing factor.'" 525 F.3d at 201 (quoting defendant's proposed jury charge (emphasis omitted)). Drawing on both the district court's analysis in Walker and the Eighth Circuit's endorsement of the "substantive connection" standard in United States v. Jones, we concluded as follows:

> To convict a defendant of engaging in a narcotics conspiracy resulting in murder . . . under 21 U.S.C. § 848(e)(1)(A), the government need only prove beyond a reasonable doubt that one motive for the killing (or conspiracy to kill) was related to the drug conspiracy. The existence of other motives does not affect the government's ability to satisfy the "engaging in" element, as long as there is a substantive connection between the defendant's role in the murder (or murder conspiracy) and his participation in the drug conspiracy. Cf. United States v. Jones, 101 F.3d 1263, 1267 (8th Cir. 1996) (construing § 848(e)(1)(A) as requiring the jury to find "a substantive connection between the killing and the [narcotics conspiracy]" (emphasis added)). The government has no burden to establish that a drug-related motive was the sole purpose, the primary purpose, or even that it was equally as important as any non-drug-related purpose, as long as it was one purpose.

16

Id. at 202. Finally, in United States v. Santos, we again rejected a challenge to a § 848(e)(1)(A) conviction for killing while engaging in a drug conspiracy, reaffirming that "the nexus between a murder and a drug offense need not be more than the 'substantive connection' described in United States v. Desinor," and that proof of a drug-related motive "fully satisfies whatever 'nexus' requirement might be implied by the language of section 848(e)(1)(A)." 541 F.3d at 65, 69.[4]

> C. The Evidence Was Sufficient To Prove that Caraballo Intentionally Killed Fernandez While Engaging in a Drug Conspiracy Punishable Under 21 U.S.C. § 841(b)(1)(A)

>> 1. Proof of a Drug-Related Motive Is Sufficient, But Not Necessary, To Satisfy the "Substantive Connection" Requirement

We now turn to Caraballo's assertion that, under Desinor and Santos, the "substantive connection" between a defendant's drug activities and the charged killing necessary to sustain a § 848(e)(1)(A) conviction is not proved unless the killing was committed, at least

---

[4] To the extent the government asks us to reconsider our § 848(e)(1)(A) case law in light of the Supreme Court's decision in United States v. Ressam, 128 S. Ct. 1858 (2008) – handed down in the months between Desinor and Santos – we decline to do so, as this decision does not "cast[] doubt on our controlling precedent," Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury, 445 F.3d 136, 145 (2d Cir. 2006). As the Court observed in Ressam, the phrase "carries an explosive during the commission of any felony" used in 18 U.S.C. § 844(h)(2) "denotes a temporal," rather than substantive link. 128 S. Ct. at 1861. The word "during," however, does not appear in § 848(e)(1)(A). Moreover, the Ressam Court noted that the relevant legislative history supported its conclusion "that Congress did not intend to require the Government to establish a relationship between the explosive carried and the underlying felony." Id. As discussed above, a different intent is apparent from the legislative history of § 848(e), in which the drug-relatedness of the killings to be targeted by the statute is repeatedly noted.

17

in part, "in order to further" the charged drug crime. Appellant's Br. at 39. Caraballo misreads our case law.

As noted in the preceding section, Desinor and Santos (1) confirmed that § 848(e)(1)(A) requires a "substantive," not merely "temporal" connection between a charged drug offense and a charged killing, and (2) reaffirmed our holding in Walker that proof of a drug-related motive satisfies this requirement. In doing so, both Desinor and Santos explained that "[t]he government has no burden to establish that a drug-related motive was the sole purpose, the primary purpose, or even that it was equally as important as any non-drug-related purpose, as long as it was one purpose." United States v. Desinor, 525 F.3d at 202 (emphasis added); see United States v. Santos, 541 F.3d at 69 (quoting this language). Read in context, the highlighted statement simply clarifies that a single drug-related motive for a killing, even among many non-drug-related motives, satisfies § 848(e)(1)(A)'s "substantive connection" requirement. See United States v. Santos, 541 F.3d at 69 ("We think the rule set forth in Desinor fully satisfies whatever 'nexus' requirement might be implied by the language of section 848(e)(1)(A)." (emphasis added)). Neither Desinor nor Santos, however, ruled that only proof of a drug-related motive could satisfy this requirement.

Moreover, neither of the rationales for a judicially implied "substantive connection" requirement – (1) ensuring a sufficient nexus between § 848(e)(1)(A) homicides and Congress's commerce powers, and (2) remaining faithful to Congress's apparent intent that

18

the statute reach "drug-related" killings, see supra at **[15]** – justifies narrowing the scope of § 848(e)(1)(A) to reach only killings motivated by the specified drug offenses. This reading is also without support in the statutory text. Narrowing the reach of the statute in the manner Caraballo proposes is therefore beyond our authority. See generally United States v. Locke, 471 U.S. 84, 96 (1985) (recognizing that when "nothing in the legislative history remotely suggests a congressional intent contrary to Congress' chosen words . . . any further steps take the courts out of the realm of interpretation and place them in the domain of legislation"); Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 97 (1981) (stating that "authority to construe a statute is fundamentally different from the authority to fashion a new rule" not adopted by Congress); cf. Summers v. Earth Island Inst., 129 S. Ct. 1142, 1148 (2009) (observing in standing context that, "[e]xcept when necessary in the execution of [the judicial] function, courts have no charter to review and revise legislative and executive action").

2.  Caraballo's Use of His Position as the Supplier of the Charged § 841(b)(1)(A) Conspiracy To Induce Co-Conspirators To Commit the Fernandez Murder Was Sufficient To Support His § 848(e)(1)(A) Conviction

Having rejected Caraballo's narrow construction of § 848(e)(1)(A)'s "substantive connection" requirement, we must still determine whether the trial evidence was sufficient to demonstrate such a connection between Caraballo's "role in the murder" of Fernandez "and his participation in the drug conspiracy." United States v. Desinor, 525 F.3d at 202.

19

In undertaking this analysis, we are mindful of the concern noted in United States v. Santos: that phrases such as "substantial nexus," used in isolation, may be "too vague to give courts and juries sufficiently concrete guidance" in § 848(e)(1)(A) cases. 541 F.3d at 69. The concern commands particular attention because of the possibly profound consequence of a § 848(e)(1)(A) conviction: a death sentence. Nevertheless, we can easily conclude that the necessary "substantive connection" was proved in this case.

While a "substantive connection" between an intentional killing and a qualifying narcotics conspiracy is sufficiently proved if one motive for the killing was related to the drug enterprise or conspiracy, we see no reason why it is not also proved by evidence that the defendant used qualified drug dealings to procure the murder.[5]

In this case, even though Caraballo's motive for killing Fernandez – his romantic

_____

[5] We need not here decide what other circumstances might suffice to prove the "engaging in" element of § 848(e)(1)(A). See, e.g., United States v. Glenn, 312 F.3d 58, 69 (2d Cir. 2002) (noting in dicta that element was satisfied where drug dealer killed co-conspirator during argument over distribution of proceeds from robbery of another drug dealer). We do, however, note that our holding today does not depart from our prior approval of a jury charge stating that "a defendant engaging in a narcotics conspiracy who kills a spouse in a purely non-drug-related domestic dispute would not satisfy" the requirements of § 848(e)(1)(A). United States v. Desinor, 525 F.3d at 201. We clarify simply that, while a killing in the heat of a domestic dispute would not generally fall within the scope of § 848(e)(1)(A), a different conclusion obtains where a defendant chooses to resolve such a dispute by offering participation in his qualifying drug enterprise to procure the cooperation of others in the murder of a spouse or paramour. Moreover, we reaffirm that a § 848(e)(1)(A) indictment is sufficient to invoke the court's jurisdiction and state an offense where it "plainly tracks the language of the statute and states the time and place of the alleged murder." United States v. Frias, 521 F.3d 229, 235-36 (2d Cir. 2008).

20

relationship with Quincy Martinez – was personal and not drug-related, ample evidence demonstrated that Caraballo used his qualified drug dealings to procure the murder. Specifically, he induced Aguilar and Taylor to assist in the murder by promising to forgive past drug debts and to supply them with drugs in the future.[6] As the prosecution aptly stated in summation, Caraballo "used the [narcotics] conspiracy as a tool" to commit a murder desired for personal reasons. Trial Tr. at 3552. We conclude that this was sufficient to permit a reasonable jury to find that Caraballo killed Fernandez while "engaging in" the charged drug conspiracy.[7] Accordingly, we reject Caraballo's sufficiency challenge and affirm his conviction.

### III.   Conclusion

To summarize, we conclude:

(1) a killing is committed by "a person engaging in" a qualifying drug conspiracy within the meaning of 21 U.S.C. § 848(e)(1)(A) if (a) one motive for that killing was related to the drug conspiracy, or (b) that person's position in or control over the conspiracy

---

[6] The government also contends in the alternative that Caraballo's § 848(e)(1)(A) conviction may be sustained on an aiding and abetting theory because Caraballo, with knowledge of Aguilar and Taylor's drug-related motive for participating in the killing, induced their actions in violation of the statute. See United States v. Walker, 142 F.3d at 113 (recognizing aiding and abetting culpability under § 848(e)(1)(A)). In light of our determination that Caraballo is guilty as a principal of violating § 848(e)(1)(A), we need not here discuss the full scope of aider and abettor culpability under this statute.

[7] The second paragraph of the government's proposed charge, see supra at **[8]**, anticipated this construction of the statute's "engaging in" element.

21

facilitated the commission of the murder; and

(2) evidence demonstrating that Caraballo induced his drug associates to participate in Fernandez's murder through promises to forgive drug-related debts and to engage in future drug transactions was sufficient to sustain his conviction under § 848(e)(1)(A).

AFFIRMED.